IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-31090
_____

ARNOLD JACKSON; LINDA
JACKSON; BRIAN JACKSON,

                                        Plaintiffs-Appellants,

v.

FIE CORPORATION, ET AL

                                        Defendants

SOUTHERN DIECAST COMPANY

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-2389)
_____

October 5, 1998

Before KING, BARKSDALE, and STEWART, Circuit Judges,

PER CURIAM:[*]

        Arnold Jackson was permanently paralyzed when his .25
caliber firearm fell to the ground and discharged.  Suit was
filed under the Louisiana Products Liability Act against a number
of defendants, including Southern Die Cast Company, the
manufacturer of the gun frame.  The district court granted

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Southern Die Cast Company's motion for summary judgment, and the plaintiffs appeal.  We affirm.

## I.

On the afternoon of May 20, 1992, Arnold Jackson, a former police officer, was carrying a legal-size envelope containing his .25 caliber firearm known as a "Saturday Night Special".  He stumbled as he entered his home, and the firearm fell to the ground and discharged.  A bullet entered Mr. Jackson's throat and became lodged in his cervical spine, permanently paralyzing Mr. Jackson's entire body below his throat.

Mr. Jackson, his wife, and his son filed suit against several defendants, including Southern Die Cast Company (Southern), in the Civil District Court for the Parish of Orleans.  Southern removed to federal district court in Louisiana.  Southern then filed a motion for summary judgment in the district court, alleging that the only part of the gun which it manufactured, the frame, was not unreasonably dangerous.  The district court granted Southern's motion for summary judgment.  Plaintiffs appeal.

## II.

This court reviews a grant of summary judgment de novo. Scot Properties, Ltd. v. Wal-Mart Stores, Inc., 138 F.3d 571, 573

(5th Cir. 1998). A party is entitled to summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986); Scot, 138 F.3d at 573; Fed. R. Civ. Proc. Rule 56(c). Any fact "that might affect the outcome of the suit under the governing law" is a material fact. Anderson, 106 S.Ct. at 2510. The court must consider the facts in the light most favorable to the non-moving party. Anderson, 106 S.Ct. at 2513; Vance v. Nunnery, 137 F.3d 270, 272 (5th Cir. 1998). In opposing a motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552-53 (1986); Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998); Rule 56(e). If the non-movant bears the burden of proof at trial, the moving party need not submit evidence to support its motion, but need only point out the absence of evidence supporting the non-movant's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### III.

To recover under the Louisiana Products Liability Act (LPLA), a claimant must prove that: (1) the defendant is a manufacturer of the product alleged to be defective; (2) the damage was proximately caused by a characteristic of the product;

3

(3) that characteristic made the product unreasonably dangerous in one of four ways--construction or composition, design, lack of an adequate warning, or nonconformity with an express warranty; and (4) the damage arose from a reasonably anticipated use of the product by the plaintiff or another person or entity. LA.REV.STAT.ANN. § 9:2800.54 (West 1991). The Jacksons argue that the facts established by the summary judgment evidence are sufficient to support their claim under the LPLA and that the district court erred in granting summary judgment in favor of Southern. We disagree.

While the summary judgment evidence supports the finding that Southern manufactured the frame of the gun which injured Mr. Jackson, we find no genuine issue of material fact concerning the manufacturing of the firing mechanism. There is no evidence that Southern manufactured the firing mechanism for purposes of the LPLA. We reject the Jacksons' contention that Southern should be treated as a manufacturer of the entire gun simply because Southern manufactured the frame. "A manufacturer can not be liable in a product liability claim where it shows that it did not manufacture or install the component of the product alleged to be defective." Newman v. General Motors Corp., 524 So.2d 207, 209 (La.App. 4th Cir. 1988); see also, Home Insurance Co.v. National Tea Co., 577 So.2d 65 (La.App. 1st Cir. 1990); Duhon v. Petroleum Helicopters, Inc., 554 So.2d 1270 (La.App. 3d Cir. 1989).

The Jacksons do not contend that the frame is the part of the gun which caused it to discharge, i.e., the component of the product alleged to be defective.[1]  They simply argue that the size of the barrel made the gun unsafe; that (with "for want of a nail" logic) without the frame, the gun could not have been completed; and that, knowing all this, Southern manufactured the frame.  This is not enough to state a claim under the LPLA against the manufacturer of a non-defective component.  See LA.REV.STAT.ANN. § 9:2800.54 (West 1991).

The Jacksons argue that the deposition testimony of Adolf Michel, president and owner of Southern, and the affidavit of Rex Davis, former director of the Bureau of Alcohol, Tobacco and Firearms, present genuine issues of material fact such that a reasonable jury could conclude that Southern was negligent within the meaning of the LPLA.  Mr. Michel's deposition testimony indicates that he knew that the gun frame at issue (which was made in the United States) could not legally be made abroad and

---

[1]  The Jacksons have never contended that the frame of the gun caused Mr. Jackson's injuries.  They have, instead, contended that Southern should be treated as a manufacturer of the entire gun under the LPLA.  They claim that had Southern not circumvented federal laws on the importation of guns by manufacturing the frame in the United States, this gun would never have been manufactured and Mr. Jackson would never have been injured.  This is not the test for "manufacturer" status under the LPLA.  See LA.REV.STAT.ANN. § 9:2800.53(1) (West 1998).  Under the LPLA's definition of  "manufacturer", Southern is a manufacturer of the frame but not of the firing mechanism or of the whole gun.  Since the Jacksons have not contested Southern's claim that the firing mechanism caused the gun to discharge, we treat this as a stipulated fact.

5

imported to the United States.[2]  However, it does not follow that he knew that the frame was unsafe.

Mr. Davis's affidavit indicates that safety concerns were a factor in the adoption of the Gun Control Act of 1968, which outlawed the importation of the "Saturday Night Special".  Mr. Davis concluded that Southern's "reckless disregard for the public safety" was the proximate cause of Arnold Jackson's injury.  He neither provided factual support for this conclusion nor pointed to evidence that the frame of the gun played any role in the discharge.  Accordingly, neither the deposition testimony of Mr. Michel nor the affidavit of Mr. Davis creates a genuine issue of material fact.

The Jacksons argue that they presented genuine issues of material fact concerning Southern's intentional evasion of federal safety regulations.  We reject their contention that this is a basis for holding Southern liable for Mr. Jackson's injury. The LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products." LA.REV.STAT.ANN. § 9:2800.52 (West 1991).  In <u>Jefferson v. Lead</u>

---

[2]  § 921(27) of the Gun Control Act of 1968 prohibits the importation of guns with an overall length of less than 10 inches.  Mr. Jackson's gun, a .25 caliber, short-barreled pistol called a Titan and known as a "Saturday night special" would not have met this requirement had it been imported. Its overall length was 4 5/8 inches.  Because it was manufactured in the United States it did not have to meet this length requirement. We note that there was nothing illegal involved in the manufacturing of this gun.  We reserve the issue of the safety of this type of gun for another day.  In this case it is not even alleged that the length of the barrel caused the claimant's injuries.

Industries Association, Inc., 106 F.3d 1245. 1249 n.13 (5th Cir. 1997), this court rejected the plaintiff's attempt to recover under a civil conspiracy theory of liability where the plaintiff was unable to show which of several manufacturers produced the defective product at issue there.  We likewise reject the Jacksons' attempt to create liability under a civil conspiracy theory where the defendant is the manufacturer of a non-defective component of an allegedly defective product.

In conclusion, we reject the contention that Southern was the manufacturer of the entire gun under the LPLA.  Since the Jacksons bear the burden of proof at trial and they have failed to set forth specific facts showing a genuine issue of material fact concerning Southern's status as the manufacturer of the injury-causing device, summary judgment in favor of Southern was appropriate.  See Saunders, 942 F.2d 299, 301 (5th Cir. 1991).

IV.

For the foregoing reasons, we find that the district court did not err in granting summary judgment in favor of Southern Die Cast Company.  The judgment is AFFIRMED.