# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2010

No. 08-10494

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COREY BROADNAX,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED. We also deny Panel Rehearing but withdraw our prior opinion, issued on January 26, 2010, and substitute the following.

Corey Broadnax appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, we AFFIRM.

No. 08-10494

**I**

The following facts are undisputed. An undercover narcotics officer with the Dallas Police Department made an "undercover buy" of crack cocaine from a person at the window of the back of a house located at 915 North Jester Street in Dallas, Texas. The officer identified the seller as Corey Broadnax. The officer conducted additional surveillance and witnessed Broadnax entering and exiting the house. Based on the "buy," the police obtained an arrest warrant for Broadnax and a search warrant for the premises at 915 North Jester. They executed the warrants and arrested Broadnax as he was walking out the front door of the premises. The police seized from the house an RG Industries, Model RG 31, .38 caliber revolver, serial number 019420; rocks of crack cocaine; cash; a digital scale; and documents linking Broadnax to the residence.

The grand jury returned a single-count indictment charging Broadnax with violation of 18 U.S.C. § 922(g)(1). Broadnax pleaded not guilty and proceeded to trial before a jury.

Broadnax is a convicted felon with a lengthy criminal history.[1] Rather than submitting evidence to the jury of his prior convictions, the government and Broadnax agreed to the following stipulation:

> The undersigned agree that the following facts are true and correct and that they are to be accepted as evidence by the jury in this case. Prior to February 5, 2007, the defendant, Corey Jerome Broadnax, had been convicted in a court for a crime punishable by

---

[1] The record reveals that in 1994 Broadnax pleaded guilty to aggravated assault and was sentenced to a probationary term; his probation was later revoked and he was sentenced to seven years' imprisonment. In 2005, he pleaded guilty to a felony drug possession charge and the felony offense of "possession of a prohibited weapon" and sentenced to two years' imprisonment. While on probation for those charges in 2006, Broadnax pleaded guilty to additional drug possession charges and received a two-year sentence. While on probation for the 2005 offenses and on bond for the 2006 offenses, Broadnax was arrested as a result of the undercover drug operation that gave rise to the instant appeal. In relation to that arrest, Broadnax was convicted of "delivery of a controlled substance" and "possession of a controlled substance" and sentenced to two years and 180 days, respectively.

imprisonment for a term exceeding one year, that is, a felony offense.

To establish the interstate nexus element, the government presented testimony of Special Agent Daniel Meade of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Meade is formally trained in trafficking techniques for firearms in the United States and his job is to determine whether or not a particular firearm traveled in or affected interstate commerce. Meade testified that the RG Industries, Model RG 31, .38 caliber revolver, serial number 019420 was a firearm. He testified that RG Industries is located in Miami, Florida, "where this firearm would have been assembled" and also stated that "[t]his particular firearm, the frame was manufactured in Miami, Florida . . . ." Meade further testified that "[o]ther than the gun] being bought and sold through interstate commerce, I don't know how it particularly got to Texas in this instance, but it would have been bought and sold in commerce."

At the close of the government's case, Broadnax moved for acquittal pursuant to FED. R. CRIM. P. 29. He moved again at the close of all evidence. The district court denied both motions. The jury found Broadnax guilty. Broadnax renewed his motion for acquittal and the district court again denied the motion. The district court sentenced Broadnax to 100 months' imprisonment to be followed by two years of supervised release.

In his timely appeal to this court, Broadnax contends, *inter alia*, that the district court's definition of "firearm" resulted in a constructive amendment of the indictment by allowing the government to prove only that the *frame* of the RG revolver, rather than the specified, completed weapon moved in interstate commerce. Broadnax also argues that his conviction may not be sustained on the evidence before the jury because the government did not prove that the revolver identified in the indictment was "in or affecting interstate commerce" and that the prior felony stipulation did not prove a "crime punishable by

No. 08-10494

imprisonment for a term exceeding one year" as that phrase is defined under 18 U.S.C. § 921(a)(20).[2]   Broadnax further argues that the district court's jury instructions were plainly erroneous.

## II

Broadnax makes his constructive amendment argument for the first time on appeal. "[T]his circuit applies plain error review to forfeited constructive amendment arguments." *United States v. Daniels*, 252 F.3d 411, 414 n.8 (5th Cir. 2001). Under that standard, we will correct forfeited errors only if: (1) there was an error; (2) the error was clear or obvious; and (3) the plain error affected the substantial rights of the defendant. *United States v. Griffin*, 324 F.3d 330, 356 (5th Cir. 2003). If these three conditions are met, we may, in our discretion, correct a forfeited error only if it "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (citation omitted).

A criminal defendant has a Fifth Amendment right to be "tried only on charges presented in a grand jury indictment." *United States v. Chandler*, 858 F.2d 254, 256 (5th Cir. 1988). Only a grand jury has the power to amend an indictment. *See id.* "A jury charge constructively amends an indictment . . . if it permits the jury 'to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged.'" *United States v. Daniels*, 252 F.3d 411, 413-14 (5th Cir. 2001) (citing *Chandler*, 858 F.2d at 257). The accepted test is that a "constructive amendment occurs if the jury is permitted to convict on an alternative basis permitted by the statute but not charged in the indictment." *Id.* at 414 (internal quotation marks and citation omitted).

---

[2] Broadnax's purports to raise an ineffective assistance of counsel claim. We do not usually hear ineffective assistance claims on direct appeal, *see United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008), and Broadnax failed to fully brief the issue, *see Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1067 (5th Cir. 1996). Nothing herein forecloses Broadnax from asserting an ineffective assistance claim in any future habeas proceeding.

No. 08-10494

Section 922(g)(1) provides in relevant part that:

It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm.

18 U.S.C. § 922(g)(1). "Firearm" is a term of art. It means "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[;] . . . the frame or receiver of any such weapon[;] . . . any firearm muffler or firearm silencer[;] . . . or any destructive device."[3]  18 U.S.C. § 921(a)(3). "To establish a violation of § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005).

The issue is whether the indictment is to be read as requiring proof beyond a reasonable doubt that Broadnax possessed a "firearm," as that term is defined under § 921(a)(3), that was "in and affecting interstate commerce," or whether it requires proof that Broadnax possessed the *specific* firearm named, the "RG Industries, Model RG 31, .38 caliber revolver, serial number 019420," and that it was "in and affecting interstate commerce." According to Broadnax, the indictment charged "that a specific completed weapon—the RG Industries, Model RG 31, .38 caliber revolver, serial number 019420—had been possessed in and affecting interstate commerce." Broadnax contends that the jury instructions worked a constructive amendment of the indictment because they allowed the jury to convict on the basis that a component of the firearm, specifically, the *frame*, was in interstate commerce, rather than requiring the government to prove beyond a reasonable doubt that the specific, completed

_____

[3] The jury instructions were substantially identical to the language of § 921(a)(3).

5

weapon was in or affecting interstate commerce. The government contends that by pleading the weapon as a "firearm," Broadnax was put on notice that the government sought conviction by proof that he possessed a "firearm," as that term of art is defined, in and affecting interstate commerce.

We begin our analysis with the indictment itself. The indictment charged that Broadnax "did knowingly possess, in and affecting interstate commerce, a firearm, to wit: a RG Industries, Model RG 31, .38 caliber revolver, serial number 019420." Contrary to Broadnax's argument, the indictment does not charge "that a specific completed weapon——the RG Industries, Model RG 31, .38 caliber revolver, serial number 019420——had been possessed in and affecting interstate commerce." Rather, it charges simply that he possessed, "in and affecting interstate commerce, a firearm." The "in and affecting interstate commerce" element is not specifically alleged as to the RG revolver, but more broadly as to "a firearm." Thus, the indictment requires proof of a nexus between interstate commerce and a "firearm," as that word is defined. Accordingly, because the definition of "firearm" includes the frame, proof that the frame was "in and affecting interstate commerce" would be sufficient for a conviction under this indictment.[4] *See United States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997) (finding that the "jurisdictional nexus of § 922(g)(1) may be satisfied by proof that the component part of the firearm traveled in interstate commerce, rather than the firearm itself"); *see also United States v. Munoz*, 150 F.3d 401, 417 (5th Cir. 1998) (rejecting argument that indictment charging possession of 12-gauge sawed-off shotgun in violation of § 922(g)(1) was constructively amended where evidence showed shotgun was 20-gauge).

---

[4] As discussed *infra* in Part III.A., we find that the evidence adduced at trial was sufficient for a reasonable juror to find "beyond a reasonable doubt" that the entire firearm itself, rather than just the frame, was "in and affecting interstate commerce."

No. 08-10494

Broadnax's reliance on *United States v. Chambers*, 408 F.3d 237 (5th Cir. 2005), is misplaced. *Chambers* involved a § 922(g)(1) indictment for "knowingly possess[ing] in and affecting interstate commerce ammunition, to wit: 104 rounds of .40 caliber S&W jacketed hollow-point ammunition, distributed by the Houston Cartridge Company, which had been transported in interstate commerce . . . ." *Id.* at 240. The evidence did not show that any of the completed rounds identified in the indictment had ever moved in interstate commerce, although there was evidence that some of the ammunition components had moved in interstate commerce. *Id.* at 239. The trial court instructed the jury to convict if it found that the defendant possessed ammunition, defined as "ammunition or cartridge cases, primers, bullets or propellant powders designed for use in any firearm," that had, at some time, been in and affecting interstate commerce. *Id.* The government, relying on this instruction, argued in closing that the "in and effecting commerce element" could be proven by evidence that "the components, before they were assembled, crossed state lines." *Id.* The jury convicted. On appeal, Chambers argued that the indictment was constructively amended by instructions which allowed conviction if component parts of the ammunition, as opposed to the specific rounds identified, had been transported in interstate commerce. This court agreed.

The *Chambers* indictment differs in a critical way from the indictment charging Broadnax. It charged that the 104 specific, completed rounds of ".40 caliber S&W jacketed hollow-point ammunition . . . distributed by the Houston Cartridge Company . . . *had been transported in interstate commerce*." *Id.* at 240 (emphasis added). Thus, because the indictment charged that *those specific rounds* had been transported in interstate commerce, the government was required to prove that fact and could not satisfy its burden by proving some other ammunition or component that could have been charged under § 922(g)(1) had been transported in interstate commerce. Broadnax's indictment does not

7

allege that the "RG Industries, Model RG 31, .38 caliber revolver, serial number 019420," itself, was "in and affecting interstate commerce" or had been transported in commerce. Such an indictment would be analogous to the language of the *Chambers* indictment and would require proof that the specific weapon identified was transported in interstate commerce. But that is not the indictment that we have before us. Broadnax's indictment permits conviction if a firearm, as statutorily defined, and even if not the completed weapon described in the indictment, affects interstate commerce, and therefore forecloses reliance on *Chambers*.

For similar reasons, we find Broadnax's reliance on *United States v. Doucet*, 994 F.2d 169 (5th Cir. 1993), inapposite. *Doucet* involved a challenge to a conviction under 26 U.S.C. § 5861 for unlawful possession of an unregistered firearm modified to fire as a machine gun. *Id*. at 170. The trial court in *Doucet* instructed that a "machine gun" included "any combination of parts from which a machine gun can be assembled." *Id*. This was an impermissible constructive amendment because the indictment charged possession of an unregistered *assembled* machine gun and proof of possession of the parts would not have been sufficient to convict under the indictment. *Doucet* does not implicate § 922(g)(1) or Broadnax's argument that the government should have been required to prove that the specific, completed RG revolver was "in and affecting interstate commerce."

No constructive amendment occurred here because neither the evidence at trial nor the jury instructions implied that Broadnax could be convicted of anything other than being a felon in possession of a firearm that had been in and affecting interstate commerce in violation of § 922(g)(1).

### III

Broadnax contends that the evidence was insufficient to prove two elements of the offense: (1) that the specific weapon identified in the indictment

No. 08-10494

was "in and affecting interstate commerce," and (2) that Broadnax was a convicted of a *qualifying* felony under § 921(a)(20).  Because Broadnax moved for a judgment of acquittal under FED. R. CRIM. P. 29 at the close of the government's case-in-chief, and again at the conclusion of all evidence, this court reviews his sufficiency of the evidence claim *de novo*.  *United States v. Harris*, 420 F.3d 467, 470 (5th Cir. 2005).  We review a claim of insufficient evidence to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ekanem*, 555 F.3d 172, 174 (5th Cir. 2009) (citation omitted).  "In applying this standard, we view the evidence in the light most favorable to the prosecution and accept all reasonable inferences that tend to support the verdict."  *Id.* (citation omitted).

## A

To prove a violation of § 922(g)(1), the government must prove beyond a reasonable doubt that the firearm traveled in or affected interstate commerce. *Guidry*, 406 F.3d at 318.  To establish the interstate nexus, the government offered testimony of ATF Agent Meade.  Meade testified that the firearm, bearing serial number 019420, was manufactured by RG Industries, located in Miami, Florida.  He testified that Miami was "where this firearm would have been assembled."  Meade also testified that the "frame was manufactured in Miami, Florida."  Finally, he testified that he did not know how the gun "particularly got to Texas in this instance, but it would have been bought and sold in commerce."

Broadnax argues that this testimony conflates the "gun" or "firearm" and the "frame" such that it is unclear whether Agent Meade's testimony asserts that the gun itself, the RG revolver bearing serial number 019420, was manufactured in Florida or whether only the "frame" was.[5]  Essentially, Broadnax reargues his

---

[5] In a footnote, Broadnax relies on *Jackson v. FIE Corp.*, No, 97-31090, 1998 WL 723838 (5th Cir. Oct. 5, 1998), for the proposition that this court previously "acknowledged that the

constructive amendment claim that the government showed only that the *frame* of the RG revolver (not the entire revolver) was manufactured in Miami, Florida and was, therefore, in and affecting interstate commerce. As discussed above, this is a distinction without a difference. *See, e.g.*, *Munoz*, 150 F.3d at 417 (noting that § 922(g)(1) "just requires the defendant to possess a 'firearm' to violate it"); *United States v. Hamilton*, 992 F.2d 1126, 1129-30 (10th Cir. 1993) (indicating that the type of firearm represents a non-essential element of § 922(g)(1)). The indictment charged that Broadnax was a felon who "possessed, in and affecting interstate commerce, a firearm." The frame counts as a "firearm" under § 921(a)(3). Thus, evidence that the frame of the firearm was "in and affecting interstate commerce" because it was manufactured in Florida and ended up in Texas is factually and legally sufficient.

Moreover, considering the entirety of this testimony in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the RG revolver itself was "in and affecting interstate commerce." Broadnax is correct that Meade testified that the *frame* was manufactured in Florida. But Meade also testified that the gun, "a .38 caliber revolver . . . serial number . . . 019420" made by RG Industries, "would have been *assembled*" in Miami. Thus, a rational juror could have concluded from this testimony not only that the *frame* was manufactured by RG Industries in

---

'frame' of a gun is a distinct component of the complete gun, and has rejected the assertion that the manufacturer of the 'frame' must be assumed to be the manufacturer of the complete gun." *Jackson v. FIE Corp.* was a products liability suit alleging that a firearm that accidentally discharged was unreasaonbly dangerous. The manufacturer of the gun's frame won summary judgment because there was no evidence that the frame was unreasaonbly dangerous and no evidence that the frame manufacturer also manufactured the firing mechanism, which was the component of the gun alleged to be unreasaonbly dangerous. *Id.* at *2. Our statement that "[a] manufacturer cannot be liable in a product liability claim where it shows that it did not manufacture or install the component of the product alleged to be defective," simply has no bearing on the issues in this case. *Id.* Moreover, there is no record evidence, here, that the frame's manufacturer was not the manufacturer of the entire, completed gun.

Florida, but that this specific revolver was assembled in Florida and later ended up in Texas. This evidence is sufficient to support the conviction.

**B**

Section 922(g)(1) applies to "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" and, thus, one of the elements of § 922(g)(1) that the government must prove is that Broadnax was previously convicted of such a crime. *See Guidry*, 406 F.3d at 318. The term "crime punishable by imprisonment for a term exceeding one year" does not include:

> any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or . . . any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

18 U.S.C. § 921(a)(20). The only evidence offered at trial regarding Broadnax's prior criminal history was the stipulation agreed to by the parties: "Prior to February 5, 2007, the defendant, Corey Jerome Broadnax, had been convicted in a court for a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense." Broadnax contends his stipulation was merely one of fact, not that the government had established the required prior felony status as a matter of law. Broadnax further asserts that because the definition of the phrase "crime punishable by imprisonment for a term exceeding one year" excludes certain crimes, the stipulation, without more, did not prove beyond a reasonable doubt that Broadnax was convicted of a *qualifying* crime under the definition found in § 921(a)(20). The government contends that whether Broadnax's prior felony qualifies under § 921(a)(20)'s definition is a legal question for the judge, not the jury.

Our precedent is clear that "[t]he question whether a felony conviction may serve as a predicate offense for a prosecution for being a felon in possession of

No. 08-10494

a firearm pursuant to § 922(g)(1) is 'purely a legal one.'"[6]  *United States v. Daugherty*, 264 F.3d 513, 514 (5th Cir. 2001) (citation omitted); *United States v. Thomas*, 991 F.2d 206, 209 (5th Cir. 1993); *cf. United States v. Bethurum*, 343 F.3d 712, (5th Cir. 2003) (holding that the essential elements of a § 922(g)(9) violation are set forth in § 922(g)(9) itself and § 921(a)(33) is purely a legal definition of the qualifying predicate offense). Accordingly, it was for the district court, not the jury, to determine whether any of Broadnax's prior convictions

---

[6] Broadnax directs us to two Supreme Court opinions, *Old Chief v. United States*, 519 U.S. 172 (1997) and *United States v. Hayes*, 129 S. Ct. 1079 (2009), which he contends dictate that the definitional sections of § 921(a) are part of the essential elements of "felon in possession" crimes under § 922(g).

The *Old Chief* footnote, on which Broadnax relies heavily, is dicta and inapposite. The Supreme Court's discussion focused on a jury instruction, which paraphrased the definition in § 921(a)(20) in such a way that the jury would have been confused whether Old Chief's prior conviction fell within the definition. That brief discussion simply does not stand for the proposition that a *jury* must find that a prior conviction satisfies § 921(a)(20) as an essential element of a § 922(g)(1) violation.

*Hayes* is likewise inapposite. The question before the Court was not whether the definitions in § 921(a) are part of the essential elements of § 922(g) crimes, but rather, whether a domestic relationship must be an element of the predicate offense itself under § 921(a)(33)(A). *See Hayes*, 129 S. Ct. at 1082.

The view that whether a conviction falls within a § 921(a)(20) definition is a legal issue is confirmed by the many holdings of our sister circuits. *See, e.g.*, *United States v. Stanko*, 491 F.3d 408, 412-13 (8th Cir. 2007) (holding that "whether a conviction falls within the exclusions defined in § 921(a)(20)(A) is a question of law for the court"); *United States v. Bartelho*, 71 F.3d 436, 439-40 (1st Cir. 1995) (holding that § 921(a)(20) sets forth a purely legal definition, not an essential element of what constitutes a conviction for a predicate offense under § 922(g)); *United States v. Jackson*, 57 F.3d 1012, 1016-17 (11th Cir. 1995) (same); *United States v. Flower*, 29 F.3d 530, 534 (10th Cir. 1994) (same); *United States v. Clark*, 993 F.2d 402, 406 (4th Cir. 1993) (same). Moreover, the case law demonstrates that whether a prior conviction is excluded under § 921(a)(20) is often fraught with legal complexities that require parsing not only § 921(a)(2), but also state and federal statutes that define crimes. *See, e.g.*, *Stanko*, 491 F.3d at 412-19 (analyzing whether § 921(a)(20) excludes all business-related offenses and whether a violation of the Federal Meat Inspection Act is an excluded § 921(a)(20) business-related violation); *United States v. Thomas*, 991 F.2d 206, 208 (5th Cir. 1993) (determining whether a conviction under a Texas law that does not proscribe possession of a firearm acts to "restore" civil rights such that the conviction does not meet the definition under § 921(a)(20)). These legal questions are uniquely in the court's ken.

No. 08-10494

qualified as a "crime punishable by imprisonment for a term exceeding one year" as that phrase is defined in § 921(a)(20).

The record reveals no explicit finding by the district court that Broadnax was convicted of a prior felony that was not excluded under the definition found in § 921(a)(20). At a pretrial conference, the only discussion of the stipulation was Broadnax's attorney's statement that there was a "[s]tipulation to Mr. Broadnax's [sic] having a prior felony." The district court neither reviewed the stipulation nor ruled that the stipulation was legally sufficient under § 921(a)(20) when it was read to the jury. Nor did the district court instruct the jury that the stipulation satisfied the predicate felony offense element of § 922(g)(1). But the district court implicitly found the stipulation legally sufficient to satisfy the definition of a "crime punishable by imprisonment for a term exceeding one year" when it admitted the stipulation as evidence.[7] The district court also found the guilty verdict was supported by proof beyond a

---

[7] Seizing on this court's statement in *Bethurum*, that "the trial judge rather than the jury should determine *whether a particular conviction is admissible as relevant evidence* of a misdemeanor crime of domestic violence" for purposes of a conviction under § 922(g)(9), *see* 343 F.3d at 717 (emphasis added), Broadnax argues that our jurisprudence is properly read as answering the question of who determines *admissibility*, not whether the definitions found in § 921(a) are legal questions for the court rather than elements of the offense to be found by the jury. To be clear, *Bethurum* explicitly faced, and answered, that question. We held that the "essential elements of a violation of § 922(g)(9) are set forth in § 922(g)(9) itself; § 921(a)(33) simply provides a legal definition." 343 F.3d at 717. We took the same position with respect to the interaction between § 921(a)(20) and § 922(g)(1). *Daugherty*, 264 F.3d at 514. Of course, whether a prior conviction satisfies the legal definition of a prior criminal offense under § 921(a) has implications for admissibility. A prior conviction will only be admissible if it satisfies the legal definition under § 921(a) because any conviction that did not satisfy the relevant definition of a predicate criminal offense would be *irrelevant* to determining a violation under § 922(g), and therefore, inadmissable. FED. R. EVID. 402 ("Evidence which is not relevant is not admissible."). The judge must decide whether a particular conviction is admissible as relevant evidence, "*even though the trial judge's ultimate decision* to admit or not to admit a prior conviction *may require a factual showing.*" *Bethurum*, 343 F.3d at 717 (emphasis added). The jury is only required to find facts as they relate to essential elements of the crime, but is not required to assess facts that underlie a purely legal question.

13

reasonable doubt as to all elements when it rejected Broadnax's FED. R. CIV. P. 29 motion for acquittal, entered the jury's verdict, and sentenced Broadnax.

The only question that we must decide is whether the stipulation is, in fact, legally sufficient. Our review is plenary. *Daugherty*, 264 F.3d at 514. Broadnax stipulated that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." To accept Broadnax's argument that the stipulation does not satisfy the predicate felony offense element of § 922(g)(1), we would have to ignore that the language of the stipulation is identical to the language of § 922(g)(1). This we will not do. Where a defendant's stipulation to a prior felony offense uses the very language of the statute that defines that element of the offense, he has stipulated that the element is satisfied as a matter of fact and law. *See, e.g.*, *United States v. Clark*, 184 F.3d 858, 865 (D.C. Cir. 1999) (noting that the predicate offense element of a § 922(g)(1) violation was "proven by a stipulation that mirrored the words of the statute").

## IV

Broadnax's final argument is that the district court erred in not giving the jury an instruction as to the definition under § 921(a)(20) of the phrase "crime punishable by imprisonment for a term in excess of one year," and in instructing the jury that the term "firearm" includes the "frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device." Broadnax did not object to these instructions at trial; indeed, the parties jointly submitted agreed jury instructions. The Government contends that Broadnax has "arguably" waived any argument that the instructions were erroneous. Broadnax contends that his agreement to the instructions is a mere forfeiture and should be reviewed for plain error. We have found no case in this circuit stating that agreement to jury instructions constitutes a waiver of any error in the instructions. However, other circuits have found that such agreement

No. 08-10494

constitutes a forfeiture, reviewed for plain error, rather than a waiver. *See, e.g.*, *United States v. Longstreet*, 567 F.3d 911, 921 (7th Cir. 2009); *Gov't of V.I. v. Rosa*, 399 F.3d 283, 291–93 (3rd Cir. 2005); *United States v. Perez*, 116 F.3d 840, 845–46 (9th Cir. 1997) (en banc).

Whether we consider Broadnax's argument about the jury instructions waived or review for plain error, he cannot prevail. We find plain error only if the district court committed an error, that error is "plain," and the error "affects substantial rights." *United States v. Betancourt*, 586 F.3d 303, 306 (5th Cir. 2009) (citations omitted). There was no error, plain or otherwise, in the jury instructions. Because the definition under § 921(a)(20) of the phrase "crime punishable by imprisonment for a term in excess of one year," is not an element of a violation of § 922(g)(1), the district court committed no error in not instructing the jury on that legal definition. *See Stanko*, 491 F.3d at 413 ("We also necessarily conclude that Stanko's Sixth Amendment right to a trial by jury was not violated by the district court's refusal to instruct the jury on the § 921(a)(20)(A) exclusion."). With respect to the definition of "firearm," Broadnax's contention is not that the definition was incorrect (the definition was taken verbatim from the statute), but that including the word "frame" caused a constructive amendment of the indictment. We have already disposed of this argument. There was no constructive amendment and it was not error to instruct the jury as to the definition of the word "firearm," as the jury was required to find that Broadnax possessed a "firearm" and that the "firearm" was "in and affecting interstate commerce."

## V

For the foregoing reasons, we AFFIRM.

15