# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2010

Lyle W. Cayce
Clerk

No. 09-40821

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ALEJANDRO HERNANDEZ-VERA; MARTIN REYES-CEDILLO;
FEDERICO TURRUBIATES-GARZA; ERICK HERRERA-GUTIERREZ,

Defendants–Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:09-CR-60-3

---

Before GARZA and BENAVIDES, Circuit Judges, and LYNN,[*] District Judge.

LYNN, District Judge:[**]

Alejandro Hernandez-Vera, Martin Reyes-Cedillo, Federico Turrubiates-Garza, and Erick Herrera-Gutierrez (collectively, the Defendants) were each convicted of possession with the intent to distribute and conspiracy to possess with the intent to distribute approximately 119.06 kilograms of marijuana. On

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40821

appeal, the Defendants argue that there is insufficient evidence to support the jury's guilty verdict. We affirm.

**I**

The Defendants were arrested by the United States Border Patrol in a thick, brushy area approximately 120 yards from the Rio Grande River. This area, known as the Armstrong Ranch, is a frequently used route for drug and alien smuggling. In high-traffic areas such as this, the Border Patrol has placed ground sensors that detect movement and notify the Border Patrol. On the evening of the Defendants' arrests, Agents Calderon, Barnett, and Hunt arrived at the Armstrong Ranch in response to a notification by the Border Patrol dispatch that a ground sensor in that area had been tripped.

The agents first looked for signs that anyone had crossed any of the dirt roads. Agent Hunt notified Agent Calderon and Agent Barnett that he had found footprints crossing the road, and the agents started looking for people in the brush. While Agent Barnett remained on the edge of the brush, Agent Calderon would move between five and ten yards into the thicket and then come back out. Using this tactic, the agents came across a juvenile hiding in the brush. As the agents seized the juvenile, they saw another individual running south. Although Agent Barnett chased this individual, he escaped into the rows of corn surrounding the thicket. Meanwhile, Agent Calderon took the juvenile to a patrol vehicle and remained with him while the investigation continued.

Agent Lopez arrived at the Armstrong Ranch approximately ten to fifteen minutes after the other agents in response to a call by Agent Calderon. He began searching the north side of the brush. After a few minutes of searching, Agent Lopez discovered Reyes-Cedillo hiding in the brush. Agent Barnett assisted Agent Lopez in removing Reyes-Cedillo from the brush. Upon leaving the brush, Reyes-Cedillo told the agents that he was only an illegal alien.

2

No. 09-40821

Agent Barnett returned to the location where the agents had apprehended the juvenile and continued searching the area with Agent Hunt. Following a trail inside the brush, the agents found five bundles of marijuana in trash bags that were tied with rope. The bundles had straps made by rope so that they could be carried like backpacks. The bundles were about fifteen to twenty yards from where Reyes-Cedillo was found.

After the bundles were discovered, Agent Lopez continued to search the area where Reyes-Cedillo was found. He subsequently found the three other Defendants hiding in the brush. At this point it was dark, and Agent Lopez could not see the bundles from the places the Defendants were hiding, but he could see Agent Hunt and his flashlight in the area with the bundles through the trees.

The agents then took the bundles and the Defendants to the Fort Brown Station for processing. At the station, Agent Lopez observed red markings on the shoulders and armpits of all four Defendants. Agent Lopez also saw freshly torn skin on one of Herrera-Gutierrez's shoulders. The Border Patrol took photographs of the Defendants' backs and shoulders, and the Government introduced these photographs as evidence during trial.

At the station, agents interviewed Hernandez-Vera after he waived his *Miranda* rights. Hernandez-Vera stated that he, the other Defendants, and the juvenile had crossed the border with a smuggler, who ran away when he saw the Border Patrol trucks arrive. He also told the agents that he had been carrying a backpack that contained clothes, blankets, and other small things and that the backpack weighed approximately fifteen kilograms. He said that he threw the backpack away when he was running from the Border Patrol.

The morning after the Defendants' arrest, Agent Hunt asked Agent Guerra to go to the area where the Defendants were arrested and see where the Defendants had crossed the border. Agent Guerra found signs that individuals

3

No. 09-40821

had crossed—footprints and grass dragged across the road—and, based on the prints left by different shoes, Agent Guerra estimated that four to six people had crossed. He followed the signs into the brush and searched the area. He found one old tennis shoe that he concluded had been there for some time, but he did not find any backpacks with clothing. Agent Guerra did not find any other signs that anyone had crossed the border.

A federal grand jury returned a two-count indictment charging the Defendants with (1) conspiring to possess with intent to distribute approximately 119.06 kilograms of marijuana and (2) possessing with intent to distribute the marijuana. The Defendants pleaded not guilty and proceeded to trial. Each Defendant moved for a judgment of acquittal at the close of the Government's evidence and again at the close of the evidence in the case. The district court denied these motions. The jury found the Defendants guilty as to both counts of the indictment, and the district court sentenced each of the Defendants. This appeal followed.

## II

Because the Defendants moved for a judgment of acquittal at the close of the Government's evidence and again at the close of all evidence in the case, we review the Defendants' sufficiency of the evidence claim de novo.[3] We review the sufficiency of the evidence to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[4] "In applying this standard, we view the evidence in the light most favorable to the prosecution and accept all reasonable inferences that tend to support the

---

[3] *See United States v. Broadnax*, 601 F.3d 336, 343 (5th Cir. 2010), *petition for cert. filed*, No. 09-11478 (June 17, 2010).

[4] *United States v. Sylvester*, 583 F.3d 285, 295 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1313 (2010).

No. 09-40821

verdict."[5]   "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence."[6] However, we will reverse if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, . . . as under these circumstances a reasonable jury *must necessarily entertain* a reasonable doubt."[7]

## III

The Defendants argue that there is insufficient evidence to support their convictions on either the conspiracy charge or the possession charge.  In order to convict a defendant of a drug conspiracy, the Government must prove beyond a reasonable doubt: (1) "an agreement that entails violation of federal narcotics laws"; (2) "the defendant's knowledge of the agreement and intent to join it"; and (3) the defendant's voluntary participation in the conspiracy.[8]  "Each element may be inferred from circumstantial evidence; that is, the agreement may be inferred from a 'concert of action' and knowledge of a conspiracy and voluntary participation . . . may be inferred from a collection of circumstances."[9]  "The essential elements of possession with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841 are (1) knowledge, (2) possession, and

---

[5] *Broadnax*, 601 F.3d at 343 (internal quotation marks omitted).

[6] *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996).

[7] *Id.* (internal quotation marks omitted) (emphasis in original).

[8] *Sylvester*, 583 F.3d at 295.

[9] *United States v. Watkins*, 591 F.3d 780, 788 (5th Cir. 2009).

(3) intent to distribute the controlled substance."[10] "Possession may be actual or constructive and may be proved by either direct or circumstantial evidence."[11]

The Defendants contend that the evidence gives equal circumstantial support to a theory of guilt and a theory of innocence, and thus requires this court to reverse the judgment of the district court. They maintain that the evidence in this case equally supports a theory that the marijuana belonged to someone else.

The Defendants assert that the following facts support their theory that the bundles of marijuana could have belonged to someone other than the Defendants. The Defendants were discovered in a high-traffic area with thick cover that is known for narcotics and alien smuggling. One man escaped, and it is possible that more people could have escaped because the area was not secure. The sensor in the Armstrong Ranch went off eighteen other times in the twenty-four hours prior to the Defendants' arrest, and it went off six more times while the Border Patrol agents were investigating the area. Although Agent Guerra found signs of travel, he could not link those signs to the Defendants.

The Defendants further argue that there is no evidence that they were aware of the bundles of marijuana in the brush; no Defendant made self-incriminating statements or demonstrated guilty knowledge of events in the brush where the marijuana was found. When agents found Reyes-Cedillo, he immediately told them that he was only an illegal alien. Furthermore, the marijuana was not visible from where the Defendants were hiding, and there was not a clear path from where the Defendants were found to where the marijuana was located. Agent Hunt acknowledged that in his seven years with the Border Patrol, "a package of marijuana that was unattended" had been

---

[10] *United States v. Mata*, 491 F.3d 237, 242 (5th Cir. 2007).

[11] *Id.*

found in the Armstrong Ranch area, though no further details were provided. Hernandez-Vera told the agents that he was carrying a backpack, but the area was not scoured immediately after the arrest to look for other people or backpacks. He also denied any involvement with the marijuana, even when Agent Hunt falsely told Hernandez-Vera that there was video of him carrying the marijuana. The Defendants argue that a reasonable hypothesis of innocence is that the marks on the Defendants' shoulders were caused by moving through the brush. Turrubiates-Garza argues that, in the Government's photographs, no marks are apparent on the Defendants' skin, except on Herrera-Gutierrez. Herrera-Gutierrez argues that the marks on his body were not fresh.

However, after reviewing the evidence presented at trial, we are satisfied that the evidence was sufficient to meet each of the elements of both charges and therefore sufficient to sustain the jury's verdict. Agent Guerra testified that he found signs that four to six people had crossed the border in the area where the Defendants were found, and he found no other signs that anyone else had crossed in the area. Hernandez-Vera told the Border Patrol that the Defendants had crossed the border together. Each of the Defendants had marks on his shoulders and armpits that were consistent with carrying the bundles of marijuana. Although Turrubiates-Garza argues that these marks were not visible in the Government's photographs, and Herrera-Gutierrez argues that the marks on his body were not fresh, Agent Lopez testified at trial that he saw the marks on all four Defendants' bodies and that skin on Herrera-Gutierrez's shoulders was freshly torn. The jury was entitled to credit Agent Lopez's testimony.

Furthermore, the jury was entitled to discredit Hernandez-Vera's contention that the marks on his shoulders were the result of carrying a backpack with clothes, blankets, and other small objects. The Border Patrol did not find any other backpacks in the area where the Defendants were

apprehended on the night of their arrest or during Agent Guerra's search the following morning.  There was no evidence that a large quantity of drugs, in multiple containers, had previously been found abandoned in the area. Accordingly, there was sufficient evidence for the jury to conclude that the Defendants knowingly and voluntarily agreed to violate federal narcotics laws. Likewise, there was sufficient evidence for the jury to find that the Defendants knowingly possessed the marijuana with the intent to distribute.[12]

\*      \*      \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[12] *See also United States v. Williamson*, 533 F.3d 269, 277-78 (5th Cir. 2008) ("We have held in the past that the mere possession of a quantity of drugs inconsistent with personal use will suffice for the jury to find intent to distribute." (internal quotation marks omitted)).