# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60554

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GREGORY BERNARD GRIFFIN, JR., also known as Johnny Jenkins,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

Gregory Bernard Griffin was convicted of bank fraud, wire fraud, aggravated identity theft, money laundering, and conspiracy to commit money laundering. The indictment charged that he defrauded two federally insured banks. One of those banks, Bank of America Corporation,[1] was indisputably not involved in his scheme, and at trial the government showed only that the other bank, Magnolia Federal Credit Union ("Magnolia Federal"), was defrauded. The district court presented the jury with a redacted indictment

---

[1] Although the indictment refers only to "Bank of America," context indicates that the government intended to refer to Bank of America Corporation.

No. 14-60554

and instructed the jury to consider only whether Magnolia Federal, the bank actually involved in the case, was defrauded. Griffin argues that by doing so, the district court constructively amended the indictment. He also argues that Magnolia Federal was not defrauded and, as a result, the district court lacked jurisdiction. For the reasons that follow, we AFFIRM.

I.

In 2013, Griffin executed a fraudulent scheme involving identity theft, bank fraud, wire fraud, and money laundering. First, Griffin stole the Social Security number and date of birth of someone he never met, a Mississippi native named Johnny Jenkins. Griffin then opened a bank account under Jenkins's name, using the stolen information and a money order payable to Jenkins, at Magnolia Federal.[2] Next, Griffin submitted an authorization form and a counterfeit void check purportedly on behalf of a hotel—Courtyard by Marriott Jackson—to Bank of America Merchant Services LLC, a credit card processor. That form directed Bank of America Merchant Services to deposit the proceeds from the credit card payments received by the hotel into the Jenkins account at Magnolia Federal. Previously, those payments went into Courtyard's Wells Fargo account. In total, Griffin managed to divert about $193,000 in credit card payments made to Courtyard into the Jenkins account. Using his Magnolia Federal debit card, checks, and wire transfers, he spent some of those funds.

Griffin's scheme quickly unraveled. After Griffin wrote a $57,900 check on the Jenkins account to his sister, and declined to appear in person at the bank to verify the check, an official at Magnolia Federal became suspicious and refused to pay the check. And when Interstate Hotel and Resorts (Courtyard

---

[2] Griffin's scheme was discovered in part because he put his own phone number on the application, and listed Jenkins's occupation as a heavy machine operator at MMG Home Improvement, Inc., an entity for which Griffin was the sole officer.

2

by Marriott Jackson's parent company) discovered the missing credit card payments, it contacted the Secret Service, which soon linked Griffin to the scheme.

A grand jury handed down a 17-count indictment, charging Griffin with bank fraud, wire fraud, aggravated identity theft, money laundering, and conspiracy to commit money laundering.[3] At the time the grand jury charged Griffin, the government held the mistaken belief that Griffin submitted the counterfeit authorization and void check to Bank of America Corporation—an entity distinct from Bank of America Merchant Services[4]—and that, before Griffin's scheme, credit card payments to Courtyard by Marriott were deposited in an account at Bank of America Corporation rather than Wells Fargo. As a result, the indictment referred to Bank of America Corporation and charged that Griffin "knowingly devised and executed a scheme and artifice to obtain funds under the custody or control of Bank of America and Magnolia Federal Credit Union," and to direct Bank of America Corporation to reroute the funds to the Jenkins account. In other words, the indictment charged that Griffin defrauded two federally insured banks, one of which was not involved in Griffin's scheme.

At some point, Griffin discovered this error. So after jury selection but before the jury was sworn, Griffin moved to preclude the government from referring to the not-involved-in-the-case Bank of America Corporation. He also moved to dismiss the case for lack of subject-matter jurisdiction, arguing that Magnolia Federal was the only federally insured entity in the indictment involved in the case and that Magnolia Federal was not defrauded. And because the other counts in the indictment relied on the bank fraud counts—

---

[3] Two superseding indictments contained the same charges.

[4] Bank of America Corporation is the federally insured bank holding company, while Bank of America Merchant Services is a credit card processor and is not federally insured.

for example, the counts of identity theft in furtherance of bank fraud—they would fall out of the case alongside the bank fraud counts.

Rather than re-indicting Griffin, the government conceded the motion to preclude evidence regarding Bank of America Corporation. But the government maintained that Magnolia Federal was in fact defrauded and argued that, because the indictment had so charged, the district court had jurisdiction.

During a two-day trial, the government limited its evidence to proof that Magnolia Federal, not Bank of America Corporation, was defrauded. Griffin moved for acquittal, challenging the sufficiency of the evidence that Magnolia Federal was defrauded. The district court denied the motion. The district court then redacted from the indictment any references to Bank of America as a financial institution and any references to Bank of America as a victim in the bank fraud counts. The district court also instructed the jury that the Bank of America entity involved in the case (Bank of America Merchant Services) was not federally insured and thus its involvement could not support the bank fraud charges.

The jury convicted Griffin on all 17 counts. He now appeals.

## II.

Griffin argues that by scrubbing references to Bank of America from the indictment presented to the jury, the district court constructively amended the indictment and thereby violated Griffin's Fifth Amendment right to a grand jury indictment.

"[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). But not all changes to an indictment are impermissible. A "constructive amendment" of the indictment is reversible error per se—assuming that the defendant preserved his objection

No. 14-60554

below[5]—while a "variance" is subject to harmless error review. *United States v. Nuñez*, 180 F.3d 227, 230-31 (5th Cir. 1999). To be a constructive amendment, a jury charge must permit the jury "to convict on an alternative basis permitted by the statute but not charged in the indictment." *United States v. Broadnax*, 601 F.3d 336, 340 (5th Cir. 2010) (quoting *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001)) (internal quotation marks omitted). But if "the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985).

In other words, the key inquiry is whether the jury charge *broadened* the indictment; if it only *narrowed* the indictment, no constructive amendment occurred. *Nuñez*, 180 F.3d at 232-33; *see also United States v. Soudan*, 812 F.2d 920, 929 (5th Cir. 1986) ("It is a long established principle that after an indictment has been returned its charges may not be broadened except by the grand jury itself."). Thus, "withdraw[ing] a portion of [the indictment] from the jury's consideration . . . because of the government's inability to prove that part" is not a constructive amendment, "provided the indictment still charges an offense and the same offense originally contemplated by the indictment as returned." *United States v. Prior*, 546 F.2d 1254, 1257 (5th Cir. 1977); *accord United States v. Hughes*, 58 F. App'x 597, at *1 (5th Cir. 2003) (per curiam). Similarly, eliminating surplusage from the indictment, provided that nothing is thereby added to the indictment, is not a constructive amendment. *E.g.*, *Miller*, 471 U.S. at 144; *United States v. Robles-Vertiz*, 155 F.3d 725, 729 (5th

---

[5] If raised for the first time on appeal, constructive amendment arguments are reviewed for plain error. *United States v. Broadnax*, 601 F.3d 336, 340 (5th Cir. 2010).

No. 14-60554

Cir. 1998); *see also United States v. Adams*, 778 F.2d 1117, 1124 n.11 (5th Cir. 1985).

Here, in redacting the indictment and in charging the jury, the district court only narrowed the indictment. The indictment charged that Griffin "knowingly devised and executed a scheme and artifice to obtain funds under the custody or control of Bank of America [Corporation] and Magnolia Federal Credit Union by means of materially false and fraudulent pretenses and representations." The government proved at trial that Griffin executed a scheme to obtain funds under Magnolia Federal's control through fraud. Thus, Griffin was convicted on a basis charged in the indictment. "[N]either the evidence at trial nor the jury instructions implied that [Griffin] could be convicted of anything other than" defrauding Magnolia Federal. *Broadnax*, 601 F.3d at 343. The government, by virtue of pleading that Griffin defrauded *both* Bank of America Corporation and Magnolia Federal—in the same counts— "was afforded the freedom of proving the elements of the crime in alternative ways." *United States v. Reasor*, 418 F.3d 466, 477 (5th Cir. 2005). In other words, Griffin's complaint "is not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary." *Miller*, 471 U.S. at 140. Thus, because the district court only narrowed the indictment, no constructive amendment occurred here. The variance, moreover, did not prejudice Griffin, who knew before trial that the government would proceed on a theory that only Magnolia Federal was defrauded.

## III.

Griffin also argues that the district court lacked jurisdiction because the government did not produce sufficient evidence to show that Magnolia Federal, the only federally insured bank left in the case, was defrauded.

No. 14-60554

To prove bank fraud, the government must show, among other things, "that the defendants placed the financial institution at risk of civil liability or financial loss."[6] *United States v. McCauley*, 253 F.3d 815, 820 (5th Cir. 2001). The government need not "prove a *substantial* likelihood of risk of loss," however. *Id.* (emphasis added). This court has found evidence of risk of loss to be sufficient even where the fraudulent scheme was impractical or even impossible. *See United States v. Church*, 888 F.2d 20, 24 (5th Cir. 1989) (holding that evidence was sufficient where defendant issued worthless drafts against nonexistent bank account); *see also United States v. Hooten*, 933 F.2d 293, 295 (5th Cir. 1991) (holding that evidence was sufficient where credit union might have been able to recoup its money under state law).

Griffin contends that the government did not show that his fraud placed Magnolia Federal at risk of civil liability or financial loss. This is so, argues Griffin, because Magnolia Federal suffered no loss and was the transferee institution, not the transferor institution.[7] But the government need not show

---

[6] The government points out that the Supreme Court recently cast doubt on the risk-of-loss requirement in *Loughrin v. United States*, 134 S. Ct. 2384 (2014). There, the Court rejected the defendant's argument that the bank fraud statute requires the government to prove that the defendant's scheme created a risk of financial loss to the bank. *Id.* at 2395 n.9. The Court explained that "nothing like that element appears in the clause's text" and that the statute's text "appears calculated to avoid entangling courts in technical issues of banking law about whether the financial institution or, alternatively, a depositor would suffer the loss from a successful fraud"—the precise issue on which Griffin attempts to engage the court. *Id.* But because *Loughrin* was decided after Griffin was convicted, we do not reach the question of how *Loughrin* affects our precedent on this issue. *See Janecka v. Cockrell*, 301 F.3d 316, 322 n.9 (5th Cir. 2002).

[7] Griffin's argument that, as the transferee institution, Magnolia Federal could not be liable is unfounded. In *McCauley*, this court noted that a transferee bank was "certainly exposed to a risk of loss because [the defendants] aided in the attempt to withdraw the fraudulently transferred funds." 253 F.3d at 820. And Griffin's reliance on *Bradford Trust Co. of Boston v. Texas American Bank-Houston*, 790 F.2d 407 (5th Cir. 1986) for the sweeping proposition that the transferee institution does not risk civil liability is unpersuasive. There, the court examined and applied Texas, not Mississippi, law. Even if similar negligence principles apply here, *Bradford Trust* held that determining which institution bears a loss is a fact-specific question that should be determined based on which institution was in the best position to avoid the loss, which here was likely Magnolia Federal. *See id.* at 409-10.

No. 14-60554

that Magnolia Federal *actually* suffered any loss or civil liability. *McCauley*, 253 F.3d at 820. The government elicited testimony from the vice president of operations at Magnolia Federal that it was put at risk of financial loss because of Griffin's fraudulent scheme. And it is easy to imagine a scenario in which Magnolia Federal risked loss. For example, had Magnolia Federal paid the $57,900 check to Griffin's sister before discovering the fraudulent scheme, it might be accountable for that money because, as the Magnolia Federal official testified, it was required to return the funds in the Jenkins account that were transferred from Bank of America Merchant Services. *Cf. United States v. Nelson*, 242 F. App'x 164, 173 (5th Cir. 2007) (holding that defendant subjected transferee bank to risk of loss where defendant had withdrawn fraudulently deposited funds by the time transferor bank demanded that transferee bank return those funds); *United States v. Khalil*, 73 F. App'x 751, 752 (5th Cir. 2003) (per curiam) (holding that government proved risk of loss where defendant represented himself as another person and opened account for receipt of fraudulently transferred funds). In sum, the government produced sufficient evidence that Griffin's scheme subjected Magnolia Federal, a federally insured institution, to a risk of loss—a standard satisfied even by a scheme we viewed as "no more likely to succeed than a request that the Bank exchange monopoly money for its face value in U.S. currency." *Church*, 888 F.2d at 24. Griffin's scheme was—for a time—successful, and he spent thousands of fraudulently obtained dollars. As a result, we reject Griffin's argument that the district court lacked jurisdiction.

---

And Griffin's reliance on *Bradford Trust Co. of Boston v. Texas American Bank-Houston*, 790 F.2d 407 (5th Cir. 1986) for the proposition that the transferee institution does not risk civil liability is unpersuasive—the court in that case examined and applied Texas, rather than Mississippi, law.

No. 14-60554

IV.

For the foregoing reasons, we AFFIRM Griffin's conviction.