# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2022

Lyle W. Cayce
Clerk

No. 21-50408

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Taing,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:20-CR-176-3

Before Richman, *Chief Judge*, and Wiener and Willett, *Circuit Judges*.

Per Curiam:[*]

A jury convicted Christopher Taing of possession with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841 and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Taing argues on appeal that several of his statements to law enforcement authorities were obtained illegally and should

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

have been suppressed.  He also argues that the district court made multiple errors in its jury instructions.  We affirm the district court's judgment.

**I**

Law enforcement officers suspected that Taing was involved in a drug trafficking operation in Midland, Texas.  Officer Joseph Beltran and DEA Special Agent Jaye Johnson followed Taing as he drove away from a suspected drug transaction and then parked in a hotel parking lot.  They followed him through the lobby and into the hotel's hallway.  Taing carried a backpack.  The officers ordered Taing to stop and show his hands.  He did not comply.  Taing reached under his waistband, which led the officers to suspect he was reaching for a weapon, so they detained him in the hallway.

The officers recorded what transpired on a body camera.  As Taing was handcuffed on the floor, the officers asked him if he had a weapon.  He said yes, and after frisking him, the officers recovered a loaded Glock 17 pistol from Taing's waistband.  They asked his room number and whether there were additional people or guns in the room.  Taing told the officers a room number, and he said no one and no weapons were inside.  Then the officers asked Taing if he had anything illegal in his backpack.  He responded that there was "some ice" inside.  Taing gave the officers his consent to search the backpack, and, relevant here, they found approximately four ounces of methamphetamine.  At that point, the officers read Taing his *Miranda* rights for the first time.[1]

The officers took Taing to the police station.  An audio recording reveals that they gave a second *Miranda* warning, and Taing confirmed that he understood his rights. Officer Beltran began an interrogation as follows: "Obviously, you got caught up with some meth and a pistol, okay, it's not a

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

secret, we know what's going on. So right now, your opportunity is now to either make yourself look honest or to make yourself look like a liar. So, what happened tonight?" Over the next thirty minutes, Taing confessed that he paid $1,000 for the methamphetamine, sold methamphetamine for the previous two months, and asserted he was carrying the Glock in his waistband for protection.

Relevant here, a grand jury charged Taing with a § 841 drug offense and § 924(c)(1) firearm offense. Before trial, Taing moved to suppress his post-arrest statement that he had "ice" in his backpack. The district court heard live testimony from Officer Beltran, and it considered the body camera video of Taing's arrest along with the audio interview of the station-house interrogation. The court granted Taing's suppression motion in part. It suppressed Taing's un-*Mirandized* statement that he had "some ice" in his backpack, but the court ruled that his subsequent warned confession, which took place at the station house, was admissible. Applying *Missouri v. Seibert*,[2] the court reasoned that the officers did not employ a deliberate two-step strategy to circumvent the *Miranda* rule. It then concluded that Taing's warned confession was voluntary and therefore admissible. The court emphasized that Taing had waived his *Miranda* rights and that the station-house interrogation was calm and cooperative. Accordingly, the Government introduced Taing's confession at trial, and the jury convicted Taing of the firearm and drug offenses.

## I

Taing raises three challenges in this appeal. First, he argues that his warned confession at the station house should have been suppressed because the officers deliberately employed a two-step interrogation technique to

---

[2] 542 U.S. 600 (2004).

circumvent *Miranda*.  Second, he asserts that an error in the district court's jury instructions regarding the § 924(c) offense constructively amended his indictment.  Third, he argues that the district court failed to instruct the jury that it must not let racial prejudice influence its decision-making.

## A

"Where a district court has denied a motion to suppress evidence, we review its factual findings for clear error and its conclusions of law *de novo*."[3] "[W]hether *Miranda*'s guarantees have been impermissibly denied to a criminal defendant . . . is a matter of constitutional law . . . ."[4]  "We view the evidence most favorably to the party prevailing below, except where such a view is inconsistent with the trial court's findings or is clearly erroneous considering the evidence as a whole."[5]  Additionally, when the denial of a suppression motion is based on live testimony, as in this case, our review is "particularly deferential" to the court below.[6]

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[7]  To safeguard that right, "*Miranda* warnings must be administered prior to 'custodial interrogation.'"[8]  A suspect is subject to custodial interrogation when he is "placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a

---

[3] *United States v. Lim*, 897 F.3d 673, 685 (5th Cir. 2018) (quoting *United States v. Ortiz*, 781 F.3d 221, 226 (5th Cir. 2015)).

[4] *United States v. Harrell*, 894 F.2d 120, 122-23 (5th Cir. 1990).

[5] *Lim*, 897 F.3d at 685 (internal quotation marks omitted).

[6] *Id.* (quoting *Ortiz*, 781 F.3d at 226).

[7] U.S. Const. amend. V.

[8] *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc); *see also Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

No. 21-50408

restraint on freedom of movement of the degree which the law associates with formal arrest."[9]  "Generally, statements obtained during a custodial interrogation without providing adequate warnings under *Miranda* are inadmissible."[10]

When officers question the same suspect in multiple custodial interrogations, "[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement."[11]  The Supreme Court's decision in *Oregon v. Elstad*[12] explained that "[t]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary."[13]  "The relevant inquiry is whether, in fact, the second statement was also voluntarily made."[14]  "As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements."[15]

---

[9] *Bengivenga*, 845 F.2d at 596; *see also Howes v. Fields*, 565 U.S. 499, 509 (2012) ("Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. . . . We have 'decline[d] to accord talismanic power' to the freedom-of-movement inquiry, and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." (internal citation omitted) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984)).

[10] *United States v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006).

[11] *Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

[12] 470 U.S. 298.

[13] *Id.* at 318.

[14] *Id.*

[15] *Id.*

However, if "deliberately coercive or improper tactics" were used "in obtaining the initial statement," *Elstad* is not applicable.[16] In *Missouri v. Seibert*,[17] a divided Supreme Court addressed the consequences of a "deliberate two-step strategy" that was "designed to circumvent *Miranda*."[18] Officers "relied on the defendant's prewarning statement to obtain the postwarning statement used against her at trial" by "cross-examin[ing]" her with the unwarned statements during the *Mirandized* interview.[19] Concurring in the judgment, JUSTICE KENNEDY provided the fifth vote to affirm the suppression of the defendant's warned statements.[20] Under JUSTICE KENNEDY's test, if a "deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made."[21] The "[c]urative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver."[22]

After *Seibert*, courts determining the admissibility of warned statements that follow unwarned statements must first assess whether the

---

[16] *Id.* at 314.

[17] 542 U.S. 600 (2004).

[18] *Id.* at 618, 622 (KENNEDY, J., concurring in judgment).

[19] *Id.* at 621.

[20] *Id.* at 622; *see also United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006) ("It is well established that when we are confronted with a plurality opinion, we look to that position taken by those Members who concurred in the judgments on the narrowest grounds. Therefore, we find *Seibert*'s holding in Justice Kennedy's opinion concurring in the judgment." (internal quotation marks and citations omitted)); *Marks v. United States*, 430 U.S. 188, 193 (1977).

[21] *Seibert*, 542 U.S. at 622 (KENNEDY, J., concurring in judgment).

[22] *Id.*

No. 21-50408

officers deliberately used a two-step strategy to circumvent *Miranda*.[23] If law enforcement authorities did employ such a strategy, courts evaluate whether appropriate curative measures were taken.[24] If there was no deliberate two-step strategy, however, the admissibility of the warned statements is "governed by the principles of *Elstad*."[25]

In *United States v. Nunez-Sanchez*,[26] we applied the *Seibert* and *Elstad* frameworks to affirm the denial of a motion to suppress a warned confession that followed an unwarned interrogation.[27] Officers stopped the defendant and asked him his name, age, and immigration status, to which he responded that he had entered the country illegally.[28] They then gave the *Miranda* warnings, and he confessed to several drug and firearm offenses.[29] As to the *Seibert* inquiry, we determined that "there was nothing in the circumstances or the nature of the questioning to indicate that" the officers used a deliberate two-step strategy, emphasizing that the defendant was "calm and cooperative" and the police "did not act with aggressiveness or hostility."[30] Turning to *Elstad*, we concluded that the defendant did not allege that the police had used coercive tactics during his confessions, and therefore they were voluntary and admissible.[31]

---

[23] *Id.*; *United States v. Nunez-Sanchez*, 478 F.3d 663, 668 (5th Cir. 2007).

[24] *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment).

[25] *Id.*; *see also Courtney*, 463 F.3d at 338 (explaining that the *Elstad* test applies unless there was a deliberate two-step strategy).

[26] 478 F.3d 663.

[27] *Id.* at 668-69.

[28] *Id.* at 665.

[29] *Id.*

[30] *Id.* at 668-69.

[31] *Id.* at 669.

No. 21-50408

Here, the district court determined that the police failed to provide Taing with the necessary *Miranda* warnings when he was first questioned about the contents of his backpack at the hotel. The court suppressed Taing's statement that he had "ice" in his bag, but it admitted Taing's subsequent, *Mirandized* confession at the station house. The district court reasoned that the officers did not use a deliberate two-step interrogation strategy, so it applied the *Elstad* voluntariness inquiry. The court concluded that Taing's warned statements were voluntary, so it admitted them.

We agree with the district court that the officers in this case did not employ a deliberate two-step strategy to circumvent *Miranda*. As an initial matter, Taing argues that it is the Government's burden to disprove deliberateness, citing the standard in the Second and Eighth Circuits.[32] We have not addressed the burden issue previously, and we need not resolve it to decide this case.[33] Assuming without deciding that the burden was on the Government, the preponderance of the evidence suggests that the officers did not use "coercion or other improper tactics" to circumvent *Miranda*.[34] The officers never "cross-examin[ed]" Taing with his unwarned statement

---

[32] *See United States v. Capers*, 627 F.3d 470, 479-80 (2d Cir. 2010) (placing the burden on the Government to disprove deliberateness under a preponderance of the evidence standard); *United States v. Ollie*, 442 F.3d 1135, 1142-43 (8th Cir. 2006) (same).

[33] *See, e.g.*, *United States v. Lim*, 897 F.3d 673, 692 (5th Cir. 2018) (holding that there was not a deliberate two-step strategy without addressing the burden of proof); *United States v. Tovar*, 719 F.3d 376, 388 (5th Cir. 2013) (same); *United States v. Nunez-Sanchez*, 478 F.3d 663, 668-69 (5th Cir. 2007) (same); *see also United States v. Blevins*, 755 F.3d 312, 327 (5th Cir. 2014) (holding that the defendant "has not shown that her post-*Miranda* inculpatory statements were in any way the product of coercive tactics," but without explicitly stating that was the defendant's burden).

[34] *See Nunez-Sanchez*, 478 F.3d at 668.

8

that there was "ice" in his backpack.[35]  They referenced only the physical evidence that was discovered at the scene—the pistol and drugs.

The cooperative nature of Taing's interrogations provide additional support for our conclusion that there was not a deliberate two-step strategy in this case.  In *Seibert*, "[t]he unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill."[36]  Here, however, Taing's unwarned interrogation took place at the hotel, not the station house, and it was relatively brief.  The officers had just handcuffed Taing after he reached for his waistband, and he was lying on the floor of the hotel's hallway.  They asked him whether he had any weapons, and they discovered his pistol.  Then they asked him which hotel room was his and whether other people or weapons would be found there, as well as whether there was anything illegal in his backpack.  As in *Nunez-Sanchez*, the officers also never displayed any "aggressiveness or hostility" during the interviews.[37]  We therefore conclude that "nothing in the circumstances or the nature of the questioning . . . indicate . . . coercion" or "a deliberate attempt to employ a two-step strategy."[38]

Turning to the *Elstad* inquiry, we must assess whether "the second statement was also voluntarily made" by "examin[ing] the surrounding circumstances and the entire course of police conduct with respect to the suspect."[39]  "In cases such as this, '[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission

---

[35] *See Seibert*, 542 U.S. at 621 (KENNEDY, J., concurring in judgment).

[36] *Id.* at 616 (plurality opinion).

[37] *See United States v. Nunez-Sanchez*, 478 F.3d 663, 669 (5th Cir. 2007).

[38] *See id.* at 668.

[39] *Oregon v. Elstad*, 470 U.S. 298, 318 (1985).

of the earlier statement.'"[40] As in *Nunez-Sanchez*, Taing failed to allege that the officers used any coercive tactics to obtain his warned confession.[41] The audio evidence shows the tone of the interrogation was conversational. Taing was never verbally or physically threatened. The officers also read Taing his *Miranda* rights and Taing confirmed that he understood them before they began the questioning. We therefore agree with the district court that Taing's *Mirandized* confession was not coerced, and we conclude that the court correctly denied Taing's motion to suppress his confession.

## B

Next, we address Taing's argument that the district court constructively amended the indictment in its jury instructions. A grand jury indicted Taing for "knowingly possess[ing] a firearm . . . in furtherance of [a] drug trafficking crime" in violation of § 924(c). At the close of evidence, however, the district court instructed the jury that to find Taing guilty, the Government had to prove that Taing "knowingly *used or carried* a firearm *during and in relation to*" the drug-trafficking crime.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on . . . indictment of a Grand Jury."[42] This provision "guarantees criminal defendants a right to be tried solely on allegations in an indictment returned by the grand jury."[43] "Consequently, once an indictment issues, only the grand jury may broaden or alter it."[44] "A constructive amendment occurs when [the court]

---

[40] *Nunez-Sanchez*, 478 F.3d at 669 (quoting *Elstad*, 470 U.S. at 318).

[41] *See id.*

[42] U.S. Const. amend. V.

[43] *United States v. Thompson*, 647 F.3d 180, 183 (5th Cir. 2011).

[44] *Id.* at 184.

No. 21-50408

permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged."[45]

As an initial matter, Taing asserts that constructive amendments are structural errors, rendering them per se prejudicial. Before the Supreme Court's decision in *United States v. Olano*,[46] this court had held that constructive amendments are reversible error per se.[47] After *Olano*, however, we concluded that if a defendant fails to preserve his objection below, "plain error review applies even if there has been a constructive amendment."[48] Taing did not preserve his constructive amendment argument below, so we review the district court's instruction for plain error.[49] Under plain error review, we ask if the district court committed an error that is clear and obvious and whether that error affected Taing's substantial rights.[50] If yes, "the decision whether to correct a forfeited error remains soundly within our discretion," and we may exercise that discretion only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."[51]

---

[45] *Id.* (quoting *United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010)).

[46] 507 U.S. 725 (1993).

[47] *United States v. Bohuchot*, 625 F.3d 892, 897 (5th Cir. 2010).

[48] *Id.*; *see also United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015) ("A 'constructive amendment' of the indictment is reversible error per se—assuming that the defendant preserved his objection below—while a 'variance' is subject to harmless error review." (footnote omitted)).

[49] *United States v. Stanford*, 805 F.3d 557, 566 (5th Cir. 2015).

[50] *Id.*

[51] *Id.* (quoting *Olano*, 507 U.S. at 735-36).

No. 21-50408

Not every misstatement of an offense in a jury instruction is impermissible.[52] "The accepted test is that a 'constructive amendment occurs if the jury is permitted to convict on an alternative basis permitted by the statute but not charged in the indictment.'"[53] "[T]he key inquiry is whether the jury charge *broadened* the indictment; if it only *narrowed* the indictment, no constructive amendment occurred."[54] Also, even if there was an error, what matters is "not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it."[55]

We conclude that the district court's jury instruction did not broaden Taing's indictment. Section 924(c) provides as follows:

> [A]ny person who, *during and in relation to* any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm, or who, *in furtherance of any such crime, possesses a firearm, shall*, in addition to the punishment provided for such crime of violence or drug trafficking crime [be sentenced to an additional term of years.][56]

Relevant here, the statute criminalizes "us[ing] or carr[ying] a firearm" "during and in relation to" a drug trafficking crime and "possess[ing] a firearm" "in furtherance of" the crime.[57]

---

[52] *Griffin*, 800 F.3d at 202.

[53] *United States v. Broadnax*, 601 F.3d 336, 340 (5th Cir. 2010) (quoting *United States v. Daniels*, 252 F.3d 411, 413-14 (5th Cir. 2001)).

[54] *Griffin*, 800 F.3d at 202.

[55] *United States v. Phipps*, 319 F.3d 177, 190 (5th Cir. 2003) (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

[56] 18 U.S.C. § 924(c)(1)(A) (emphasis added).

[57] *Id.*

No. 21-50408

Congress added the "in furtherance" language to § 924(c) after the Supreme Court's decision in *Bailey v. United States*,[58] which held that "use" requires "active employment."[59] In *United States v. Ceballos-Torres*,[60] we defined "in furtherance" to mean "furthering, advancing, or helping forward" a drug trafficking crime.[61] We recognized that our definition "seemingly renders" the "uses or carries" portion of § 924(c) superfluous.[62] This was so because "every use of a firearm during and in relation to drug trafficking . . . [and] carrying a firearm during and in relation to drug trafficking will also always seem to constitute possession in furtherance."[63] Nevertheless, we concluded that our definition was correct given that Congress amended § 924(c) to "broaden [its] reach."[64]

Here the grand jury charged Taing with "knowingly possess[ing] a firearm . . . in furtherance of" a drug trafficking crime. At the close of evidence, however, the court instructed the jury that it could find Taing

---

[58] 516 U.S. 137 (1995).

[59] *Id.* at 143; *see also United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000) ("In response to [*Bailey*], however, Congress amended § 924 to add the 'possession-in-furtherance' language." (footnote omitted)).

[60] 218 F.3d 409.

[61] *Id.* at 412-14.

[62] *Id.* at 412-13.

[63] *Id.* at 413 (internal quotation marks omitted); *see also id.* at 413 n.4 ("It is possible that a situation exists that would fall within the 'use-or-carrying-during-and-in-relation-to' element but not the 'possession-in-furtherance' element. But because we cannot imagine what that situation would be, for the purposes of the present analysis, we must conclude that the latter element renders the former superfluous."); *United States v. McGilberry*, 480 F.3d 326, 330 n.2 (5th Cir. 2007) ("It appears that the 'possession in furtherance of' language completely swallows the 'uses or carries during and in relation to' language," and "[i]t is difficult and maybe impossible to concoct a situation where a firearm is actively employed during a drug crime but not possessed in furtherance of that crime.").

[64] *Ceballos-Torres*, 218 F.3d at 413.

13

guilty if the evidence showed that he used or carried a firearm during and in relation to a drug trafficking crime, and it defined "use" as active employment. Taing reached for a loaded pistol in his waistband when the police approached him, he admitted that he purchased the gun for his protection while he sold drugs, and an expert testified at trial that those who sell drugs commonly carry guns for their safety. Those facts are sufficient for a conviction under either the "use-or-carrying-during-and-in-relation-to" provisions or the "possession-in-furtherance" provision of § 924(c).[65] In *Ceballos-Torres*, we observed that evidence supporting a conviction under the "use-or-carrying-during-and-in-relation-to" provisions seemingly would always also satisfy the "possession in furtherance" provisions.[66] The facts of this case do not present the "difficult and maybe impossible" circumstance in which these varying provisions have a meaningful difference. Accordingly, we conclude that the district court did not constructively amend Taing's indictment.[67]

Taing argues that a decision from one of our sister circuits supports vacating his conviction. In *United States v. Madden*,[68] the Eleventh Circuit held that a similar jury instruction constructively amended Madden's indictment.[69] The court reasoned that "during and in relation to" is broader

---

[65] *See Ceballos-Torres*, 218 F.3d at 413 ("Carrying must fall within the definition of possess. And carrying a firearm always serves to protect the holder. Because the carrying must be during drug trafficking, the carrying also furthers the trafficking by protecting the holder during that activity.").

[66] *See* 218 F.3d at 412-14.

[67] *See United States v. Thompson*, 647 F.3d 180, 186 (5th Cir. 2011).

[68] 733 F.3d 1314 (11th Cir. 2013).

[69] *Id.* at 1319. The indictment stated that the defendant "did knowingly *possess a firearm in furtherance of* . . . a drug trafficking crime." *Id.* at 1316 (emphasis added). Like here, however, the court instructed the jury that the "indictment alleges that the defendant

than "in furtherance of," so adding the "carrying-during-and-in-relation-to" offense to the jury instruction "broadened the possible bases for conviction."[70]   Although we concluded in *Ceballos-Torres* that "during and in relation to" is broader than "in furtherance of," we reasoned that once "during and in relation to" is combined with the "use" or "carry" requirement, as it is in § 924(c), the resulting "use-or-carrying-during-and-in-relation-to element" will "always seem to constitute possession in furtherance."[71]   Under our circuit precedent, the district court's jury instruction did not constructively amend Taing's indictment.

## C

Lastly, we turn to Taing's argument that his conviction must be vacated because the district court did not instruct the jury that it must not let racial bias influence its verdict.  At the close of the evidence, the court told the jury that its duty is "to base your verdict solely upon the evidence, without prejudice or sympathy" and that it must "decide this case only on the evidence which has been admitted into court during trial."  It did not discuss racial bias specifically.

We first address the standard of review.  As in his constructive amendment argument, Taing asserts that a racial bias jury instruction error is structural, requiring an automatic reversal.  Incorrect jury instructions are generally "not considered structural errors," and because Taing did not raise

---

knowingly *carried a firearm during and in relation to* a drug trafficking offense or possessed a firearm in furtherance of a drug trafficking offense." *Id.* at 1317 (emphasis added).

[70] *Id.* at 1319 (citing *Ceballos-Torres*, 218 F.3d at 413).

[71] 218 F.3d at 413 & n.4 (internal quotation marks omitted); *see also* 18 U.S.C. § 924(c)(1)(A).

this argument in the district court, we review the instruction for plain error.[72] As discussed, under plain error review, we have the discretion to correct an error only if the error is clear and obvious and affected Taing's substantial rights.[73]

We do not need to decide whether the district court committed a clear and obvious error because, even assuming that it did, Taing failed to establish that it affected his substantial rights. Taing argues that "to the extent that the jury . . . convicted Taing based upon his race," it "could have" meant the difference between conviction and acquittal. But he fails to provide any evidence that the jury actually considered racial stereotypes or animus. He offers two facts: that he is Asian-American and only 2.3% of the population of the jury pool shared his race. "There is no constitutional presumption of juror bias," however, either "for or against members of any particular racial or ethnic groups."[74] Accordingly, we conclude that Taing has not met his burden to establish a likelihood that the alleged error could have "meant the difference between [his] acquittal and conviction."[75]

---

[72] *United States v. Percel*, 533 F.3d 903, 908-09 (5th Cir. 2008); *see also Jimenez v. Wood Cnty.*, 660 F.3d 841, 847 (5th Cir. 2011).

[73] *United States v. Stanford*, 805 F.3d 557, 566 (5th Cir. 2015).

[74] *Rosales-Lopez v. United States*, 451 U.S. 182, 190 (1981).

[75] *United States v. Vasquez*, 899 F.3d 363, 378 (5th Cir. 2018) (quoting *United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018)); *see also id.* at 380 ("Even assuming for the sake of argument that the instruction was erroneous, Vasquez's mere speculation that the jury may not have found a substantive connection for some of the many charged murders is not enough to demonstrate a 'likelihood' that the instruction 'could have meant the difference between acquittal and conviction.'" (quoting *United States v. McClatchy*, 249 F.3d 348, 357 (5th Cir. 2001))).

No. 21-50408

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment.