United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 28, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 05-30156

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CHERIE MARIE COURTNEY,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana

Before SMITH and STEWART, Circuit Judges, and CRANE, District Judge.[*]

CARL E. STEWART, Circuit Judge:

The United States appeals from the district court's grant of Cherie Marie Courtney's motion

to suppress statements she made to federal investigators. Relying on *Missouri v. Seibert*, 542 U.S.

600 (2004), and *Oregon v. Elstad*, 470 U.S. 298 (1985), Courtney asserted that the agents' tactic of

obtaining inculpatory statements was designed to bypass *Miranda v. Arizona*, 384 U.S. 436 (1966).

For the following reasons, we reverse.

---

[*]District judge of the Southern District of Texas, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cherie Marie Courtney was indicted on two counts of perjury arising out of testimony she gave in the trial of Shawn Kilgarlin on charges that Kilgarlin fabricated drug tests for two employees of Anderson Industrial Scaffolding Services ("AIS"). According to the indictment, Courtney gave false testimony that (1) she worked at AIS at the time that Kilgarlin was alleged to have committed the fraud, and (2) that Kilgarlin picked up a check from AIS for the testing. Kilgarlin was acquitted of one count of mail fraud relating to the check about which Courtney testified.

Relying on *Missouri v. Seibert*, 542 U.S. 600 (2004), and *Oregon v. Elstad*, 470 U.S. 298 (1985), Courtney moved to suppress three statements that she gave to the federal investigators, alleging that they were inadmissible because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

The district court held a suppression hearing at which Agent Gregory McDowell of the Environmental Protection Agency testified regarding the investigation into Courtney's perjury. He testified that he and Agent Wayne White conducted three interviews with Courtney. The first interview took place on November 5, 2003. McDowell called Courtney and requested a meeting at her house, but Courtney proposed meeting at a McDonald's restaurant instead. The agents explained that they wanted to talk to her about whether her testimony at Kilgarlin's trial was false. They also wanted to determine why she had given the testimony. McDowell testified that prior to the meeting, he had already concluded that Courtney's testimony was false based on his discovery that she was not employed at AIS at the time she stated. During this meeting, Courtney was not told that she did not have to talk to the agents, that she could leave, or that she could hire a lawyer; however, she was

2

not told that she was required to talk to them or that she could not leave. The agents made no threats or promises and they were not in uniform. The interview lasted approximately one hour.

A week later, on November 13, 2003, the agents went to Courtney's job site to interview her again. They did not contact her prior to arriving. The interview lasted approximately forty-five minutes to an hour and took place in an unoccupied room. As with the first interview, the agents did not tell her she was free to leave, that she did not have to talk to them, or that she could call a lawyer, but they also did not tell her that she was not free to leave or that she had to talk to the them. The agents again asked why she had given false testimony and discussed whether she was paid to lie.

Courtney was indicted on November 18, 2004, and a warrant was issued for her arrest. On November 19, 2004, McDowell contacted Courtney and said that he needed to serve papers on her. Because Courtney did not want the agents to come to her job site, she volunteered to come to McDowell's office. When she arrived, McDowell informed her that she had been indicted for perjury and that she was under arrest. He then advised her of her *Miranda* rights. Courtney responded that she did not need an attorney and was willing to talk. The agents then conducted a third interview, addressing the same information as the first two.

The district court concluded that the evidence was inadmissible because the intent of the officers was to avoid the requirements of *Miranda*. The court explained that the first two interviews were unnecessary because the agents already knew that she had committed perjury. Accordingly, the court granted Courtney's motion to suppress. The United States timely filed its notice of appeal.

## II. DISCUSSION

"In considering a ruling on a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions . . . de novo." *United States v. Chavez*, 281 F.3d

3

479, 483 (5th Cir. 2002). We view the evidence in the light most favorable to the party that prevailed in the district court, here, Courtney. *Id.*

The United States argues that the district court erred in concluding that the first two interviews were custodial and that the third statement should be excluded based on *Seibert*. It contends that *Seibert* does not apply because the first two statements were not obtained in violation of *Miranda*. It further argues that even if *Seibert* were applicable, the time lapse between the first two interviews and the third was sufficient to render the *Miranda* warnings effective. Contrary to the United States' assertion, the district court did not make a finding that Courtney was in custody. Instead, the court ruled that all three statements were inadmissible because the first two interviews were part of an interrogation procedure designed to circumvent *Miranda*, a tactic proscribed by *Seibert*. Nevertheless, we agree with the United States' argument that *Seibert* only applies if the first statements were obtained in violation of *Miranda*.

In *Miranda*, the Supreme Court held that, in order to preserve the privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retained or appointed counsel. *Miranda*, 384 U.S. at 444. Generally, statements obtained during a custodial interrogation without providing adequate warnings under *Miranda* are inadmissible. *Seibert*, 542 U.S. at 608. But a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of his *Miranda* rights. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

In *Seibert*, the Supreme Court addressed:

4

> a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession. Although such a statement is generally inadmissible, since taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), the interrogating officer follows it with *Miranda* warnings and then leads the suspect to cover the same ground a second time. The question here is the admissibility of the repeated statement.

*Seibert*, 542 U.S. at 604. Thus *Seibert* only addressed the admissibility of the second, warned statement; the first statement was inadmissable.

In *United States v. Kiam*, 432 F.3d 524, 531 (3d Cir. 2006), *cert. denied*, 126 S. Ct. 1453 (2006), the Third Circuit considered whether *Seibert* applied when the first interrogation did not violate *Miranda*. There, the defendant was questioned by Customs and Border Protection about whether he knew certain Chinese nationals traveling on the same airplane. *Id.* at 526-27. The district court denied the defendant's motion to suppress holding that the defendant should have been given *Miranda* warnings during the first interrogation, but that the taint did not extend to the post-*Miranda* confession. *Id.* at 527. The Third Circuit disagreed that *Miranda* warnings were required before the first statement; consequently, it concluded no *Seibert* or *Elstad* analysis was required. *Id.* at 530-31. Likewise, in the instant case, the district court was required to determine whether *Miranda* warnings were required prior to Courtney's first two statements before considering the applicability of *Seibert*. *Accord Kiam*, 432 F.3d at 531. Because the record is well developed on this issue, we consider whether Courtney was in custody during the first two interviews.

A suspect is "in custody" for purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc). With respect to the first interview,

5

Courtney voluntarily agreed to meet with the agents at a location of her choice, a public restaurant. She was not told that she was not free to leave, nor was she told that she had to meet with the agents. The agents did not display their weapons, they were not in uniform, and at the end of the interview, Courtney left. As for the second interview, Courtney was at her place of employment. Again, however, she was not told that she had to cooperate or grant an interview, she was not told that she could not leave, and she was allowed to continue conducting business. On the facts presented here, Courtney was not in custody during either interview because a reasonable person would not have believed her freedom was restricted to the degree associated with a formal arrest. *See Mathiason*, 429 U.S. at 495 (holding that a suspect was not in custody where suspect voluntarily came to patrol office after officer requested a meeting, officer advised defendant that he wanted to talk about a burglary and that he believed the suspect was involved, suspect spoke with officer for half an hour, and at end of interview, suspect was released to leave); *see also United States v. Pofahl*, 990 F.2d 1456, 1487 (5th Cir. 1993) (holding that a suspect who invited police officers into his home and voluntarily discussed with officers his involvement in narcotics conspiracy did not first have to be advised of his *Miranda* warnings as he was not in custody). Consequently, because the first two statements were not obtained in violation of *Miranda*, the district court erred in applying *Seibert*. *Cf. Kiam*, 432 F.3d at 531.

Nevertheless, assuming arguendo that Courtney were in custody during the first two interviews and thus, a *Seibert* or *Elstad* analysis were required, we hold that the curative measures mandated by those cases were satisfied. In *Elstad*, the Supreme Court held that "[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement."

6

*Elstad*, 470 U.S. at 314. Under *Elstad*, "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." *Elstad*, 470 U.S. at 318.

As explained above, *Seibert* addressed the constitutionality of a police tactic called "question first," that calls for withholding *Miranda* warnings during an interrogation until the suspect gives a confession. *Seibert*, 542 U.S. at 605-06, 610-11 (plurality opinion). In *Seibert*, a four-justice plurality ruled that Seibert's post-warning statements were inadmissible. *Id.* at 614-17. The plurality crafted a multi-factor test for determining "whether *Miranda* warnings delivered midstream" could be effective. *Id.* at 615. Justice Kennedy provided the fifth concurring vote for affirming the suppression of the post-warning statements but felt that the multi-factor test cut too broadly. *Id.* at 621-22 (Kennedy, J., concurring in judgment). Under Justice Kennedy's test,

> postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made. Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver. For example, a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn.

*Id.* at 622. "It is well established that when we are confronted with a plurality opinion, we 'look to that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.* 343 F.3d 355, 358 (5th Cir. 2003) (internal quotation marks omitted) (quoting *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184, 189 (5th Cir.1995)). Therefore, we find *Seibert*'s holding in Justice Kennedy's

7

opinion concurring in the judgment. *Accord United States v. Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006); (explaining that the holding of *Seibert* is found in Justice Kennedy's opinion concurring in judgment); *United States v. Naranjo*, 426 F.3d 221, 231 (3d Cir. 2005) (same). *Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, "[t]he admissibility of postwarning statements [] continue[s] to be governed by the principles of *Elstad*." *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment). Consequently, if the district court determined that Courtney's first two statements were obtained in violation of *Miranda*, the next inquiry would have been whether a deliberate two-step strategy was used. *Accord Kiam*, 432 F.3d at 532 (explaining that if the suspect's first statement had been improperly unwarned, the district court should have first determined, under *Seibert*, whether the violation was a deliberate two-step interrogation process and, if it was not, then it must decide whether it was admissible under *Elstad*).

Although the district court did not make a finding that Courtney was in custody during the first two interviews, the court held that the officers deliberately avoided *Miranda*'s requirements. Assuming arguendo that the first interviews were obtained in violation of *Miranda*, we need not decide whether the practice at issue would constitute a deliberate two step process because the passage of time between the first two statements and the third post-*Miranda* statement is sufficient to ensure that the *Miranda* warnings served their purpose and that Courtney's statement was voluntary under the tests announced in both *Elstad* and *Seibert*. In contrast to *Seibert*, it would not be reasonable to regard the sessions "as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before." *Seibert*, 542 U.S. at 616 (plurality opinion) (distinguishing *Elstad*). A reasonable person would have concluded that the third interview,

8

given more than one year later and in an entirely different setting, was not a continuation of the earlier interrogation but a "new and distinct experience" that would allow the *Miranda* warnings to function effectively and present a real choice "whether to follow up on the earlier admission." *Id.* at 615-16. We hold that even if the first two statements were obtained in violation of *Miranda*, the two year lapse between those unwarned statements and the third, warned statement is sufficient to render the *Miranda* warnings effective and Courtney's third statement voluntary. *See Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment); *Elstad*, 470 U.S. at 318. Accordingly, the district court erred in concluding that *Seibert* required the suppression of Courtney's statements.

## III. CONCLUSION

For the foregoing reasons we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.