# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-41029

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

SANTA DELGADO-ARROYO

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-00736-ALL

Before JOLLY, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Pursuant to a conditional guilty plea, Santa Delgado-Arroyo appeals the denial of her motion to suppress her post-*Miranda*-warning confession to knowingly bringing, and attempting to bring, illegal aliens into the United States for financial gain. Primarily at issue is whether this confession was improperly obtained, following an earlier one that was unwarned. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

At approximately 5:00 a.m. on 1 May 2008, Delgado and three minor children, passengers on a commercial bus from Mexico, arrived at a border inspection in Laredo, Texas. Delgado identified herself to Customs and Border Patrol (CBP) Agents as a legal permanent resident, presented a United States birth certificate for each child, and identified them as her son and nieces.

Suspecting a false claim to United States citizenship, CBP Agents escorted Delgado and the children to the secondary screening area (secondary), where Delgado was separated from the children and seated in a roughly five-by-ten foot interview room. Pursuant to CBP procedure, she was handcuffed during part of the time she waited for her interviewers; she was *not*, however, handcuffed while being interviewed.

At secondary, to CBP Agent Leza, Delgado continued to claim the children were her son and nieces. The Agent also talked to the children, who admitted to being Mexican citizens and stated they did not know Delgado. Because the Agent was nearing the end of his midnight-to-8:00 a.m. shift, he prepared a memorandum for Agents for the incoming shift. This memorandum contained "just a breakdown of what the subjects ha[d] told" him and raised the possibility of a "document false claim".

When CBP Agent De Leon arrived to work the shift beginning at 8:00 a.m., she read Agent Leza's memorandum. From 8:10 a.m. to 8:25 a.m., Agent De Leon spoke to the children, who again stated: they did not know Delgado; and the birth certificates were not theirs. In addition, the children told the Agent that Delgado had provided the birth certificates and had instructed them to memorize the information they contained.

From 8:45 a.m. to 9:00 a.m., Agent De Leon interviewed Delgado for the first time. Agent De Leon was accompanied by another Agent (both were

uniformed and carried firearms); the door to the interview room was always open; Delgado was *not* handcuffed; and, a *Miranda* warning was *not* given.

Because the children's statements conflicted with Delgado's prior statement that "one of them was her son, and . . . two of them were her nieces", Agent De Leon asked Delgado about her relationship with the children. This led to Delgado's first confession; she explained she had been hired, for profit, to transport the children into the United States.

Upon hearing this first confession, Agent De Leon immediately left Delgado. Consistent with CBP procedure, she prepared memoranda notifying prosecution officers that a crime had been committed. Agent De Leon's supervisor advised her that they would "process the case", *i.e.*, prosecute Delgado.

At 10:50 a.m., Agent De Leon returned to Delgado and provided a *Miranda* warning. Delgado agreed to answer questions without a lawyer and gave a second confession, providing "thorough information in regards to the kids".

Delgado was charged with three counts of bringing, and attempting to bring, illegal aliens into the United States for commercial advantage and private financial gain. *See* 8 U.S.C. § 1324. She moved to suppress both confessions but did not testify at the suppression hearing. After the district court denied the suppression motion, Delgado entered a guilty plea, conditioned on the right to appeal the motion's denial. She was sentenced, *inter alia*, to 36 months' imprisonment.

## II.

Legal questions related to the denial of a suppression motion are reviewed *de novo*; factual findings, only for clear error. *E.g.*, *United States v. Nunez-Sanchez*, 478 F.3d 663, 666 (5th Cir. 2007). "In reviewing findings of fact, we

view the evidence in the light most favorable to the party prevailing below." *Id.* (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 429 (5th Cir. 2005)).

In denying the suppression motion, the district court found:  although it was a "close call", Delgado was not subject to custodial interrogation; and, no improper, deliberate two-step strategy, as discussed *infra*, was used to obtain the confessions.  Delgado challenges both findings.

The suppression hearing focused primarily on whether Delgado was subject to custodial interrogation when she gave the first, unwarned, confession. Nevertheless, it is unnecessary to decide that issue because the outcome turns on whether Delgado's second, warned, confession was voluntary and not part of a deliberate two-step strategy.  *See Nunez-Sanchez*, 478 F.3d at 666 ("[W]e 'may affirm the district court's decision on any basis established by the record.'" (quoting *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006))).

*Missouri v. Seibert*, 542 U.S. 600 (2004), and *Oregon v. Elstad*, 470 U.S. 298 (1985), provide the relevant analytical framework.  "*Seibert* requires the suppression of a post-warning statement only where [the below-described] deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, 'the admissibility of postwarning statements continues to be governed by the principles of *Elstad*.'"  *Nunez-Sanchez*, 478 F.3d at 668 (internal alterations omitted) (quoting *United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006)).  This "deliberate two-step strategy" involves an interrogator "rel[ying] on the defendant's prewarning statement to obtain the postwarning statement used against her at trial[,] . . . [by] confront[ing] the defendant with her inadmissible prewarning statements and push[ing] her to acknowledge them."  *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring in judgment).

A.

There is no evidence that Agent De Leon (or any other CBP Agent) used "a two-step interrogation technique . . . in a calculated way to undermine the

*Miranda* warning". *See Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment) (setting out the controlling test, *see Courtney*, 463 F.3d at 338); *see generally Miranda v. Arizona*, 384 U.S. 436 (1966). When she first interviewed Delgado, Agent De Leon suspected, but had no knowledge of, a crime. She did not question Delgado again until after Delgado had been advised about, but had waived, her *Miranda* rights.

In sum, "there was nothing in the circumstances or the nature of the questioning to indicate that coercion or other improper tactics were used. [The] evidence [reflects] that [Delgado] was calm and cooperative, and [Agent De Leon] did not act with aggressiveness or hostility". *Nunez-Sanchez*, 478 F.3d at 668–69. The principles of *Elstad*, therefore, govern this case. *See id.* at 669.

B.

Under *Elstad*, "a suspect who has responded to unwarned yet uncoercive questioning is not thereby disabled from waiving [her] rights and confessing after [s]he has been given the requisite *Miranda* warnings". *Elstad*, 470 U.S. at 318; *see also Nunez-Sanchez*, 478 F.3d at 668 (holding a post-warning confession is admissible even where there is a "previous[] . . . pre-warning confession, so long as the pre-warning confession was voluntary"). "A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Elstad*, 470 U.S. at 314.

"[T]he finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of [her] statements". *Id.* at 318. The surrounding circumstances, as discussed *supra*, show that the district court did not clearly err in finding Delgado's first confession, although unwarned, was voluntary.

Delgado's second, post-warning confession was consistent with the first. It was given after a valid waiver of her properly administered *Miranda* rights

5

and was also voluntary. As noted, Delgado was never handcuffed while being interviewed; the door to the interview room was always open; and she was not subjected to extended interviews. In short, there are "no facts indicating that coercive tactics were used in obtaining the second confession and all evidence suggests that the tone of the questioning was entirely conversational". *Nunez-Sanchez*, 478 F.3d at 669. In this regard, although Delgado was not, of course, required to testify at the suppression hearing, her decision not to do so undermines her contention that the district court clearly erred in crediting Government witnesses' testimony that showed her confessions were voluntary. *See United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996) (noting that "because [the defendant] did not testify at the suppression hearing there was no evidence" in favor of suppression (citing *United States v. Mendez*, 27 F.3d 126, 131–32 (5th Cir. 1994))).

The district court properly denied the motion to suppress the second confession. Therefore, Delgado's conditional plea agreement stands.

III.

For the foregoing reasons, the judgment is AFFIRMED.