# United States Court of Appeals for the Fifth Circuit

---

No. 23-50417

---

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Jesse McKee Howard,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CR-102-1

---

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

This appeal arises from Jesse McKee Howard's conviction for attempted coercion and enticement of a minor to engage in sexual activity and the resulting 120 months of imprisonment. His claims on appeal relate to the district court's denial of his two motions to suppress. For the following reasons, Howard's conviction is AFFIRMED.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50417

## I.

A detective with the San Antonio Police Department's Human Exploitation Unit conducted undercover operations via the online social media platform MocoSpace, "[t]o catch child predators." In November 2020, the detective set up an online profile using the undercover persona of a 16-year-old girl named "Amandpand." On November 10, 2020, Amandpand entered the "Near Me" forum, where a user named "Jannie6," whose profile indicated he was a 41-year-old man, began chatting with her. Amandpand made clear she was 16 years of age and in the process of gender transitioning. After a brief interaction, Amandpand moved the conversation to direct messaging on MocoSpace. The conversation became sexual in nature, and Jannie6 confirmed he was 41 years old and in the Army. Jannie6 eventually provided a cell phone number to move their conversation from MocoSpace to text messaging. At this point, Detective Daniel Moynihan took over the case and assumed the persona of Amandpand in the text message conversation.

Jannie6 and Amandpand texted one another over the course of two days discussing sex acts, and Jannie6 eventually sent sexually explicit messages, pictures, and videos, including one in an office of him masturbating while wearing a military uniform. Throughout their exchange, Jannie6 occasionally expressed fears of "getting caught" but never stopped messaging Amandpand. The two eventually agreed to meet on November 12, 2020. Meanwhile, law enforcement attempted to ascertain the identity of Jannie6 through the phone number he provided to Amandpand. A "Whitepages Lookup" associated the phone number with Christopher William Durand. An internet search of "christopher durand army" returned a LinkedIn profile with a photograph, showing a bald, younger individual. This photograph was provided to detectives as the possible picture of Jannie6. At the time, Detective Moynihan believed the man in the picture to be Jannie6. However, the detective was aware of texting applications that

allow users to text anonymously through a phone number assigned by the application.

Law enforcement planned an operation to be carried out at the meeting location on the day and around the time of the planned meeting. Based on the messages between Jannie6 and Amandpand, as well as the photograph and video sent by Jannie6, detectives knew the following about Jannie6: he was a 41-year-old, white man in the military, he was six feet tall, he drove a Honda SUV, and lived near "Braun and 1604." At the appointed time, a Honda SUV driven by a white man in military uniform entered the parking lot where the two were to meet, moved around the parking lot multiple times without exiting the vehicle, and then left the parking lot. Driving separately, Detective Richard Jaimes and Detective Michael Castano followed the vehicle out of the parking lot. Based on the meeting location, arrangement to have unlawful sex with a minor, and various descriptors of the driver, an officer conducted a traffic stop on the Honda SUV. Detectives Jaimes and Castano arrived right after. The man in the Honda was defendant Jesse McKee Howard, an active-duty Air Force chaplain.

When Howard was pulled over, he texted Amandpand less than a minute later, saying that he had been pulled over for speeding and telling her not to wait up. He then cleared his MocoSpace conversations, including the one he had with Amandpand. Soon after, officers approached the vehicle, removed Howard, handcuffed him and placed him in the backseat of a patrol car, and seized a cell phone in plain view after learning that Howard texted Amandpand that he had been stopped for speeding.

Detective Moynihan attempted to call the number for Jannie6, but the seized phone did not ring, light up, or display any notifications. Detective Castano began asking Howard what he was up to in the parking lot while officers searched Howard's car for a second phone, and Howard said that he

had been on his way to eat at a nearby taqueria. Detective Jaimes asked Howard if he had a second phone, which he denied.

Detective Moynihan finally arrived on the scene about 15 minutes after the stop and read Howard his *Miranda*[1] warnings. Howard waived his rights and agreed to speak with Moynihan, where he admitted that he was texting and about to meet with an underage person, that he was Jannie6 on MocoSpace, and that he used a spoofing application to text Amandpand from an anonymized cell number. Officers obtained a warrant to search Howard's phone, and Howard was charged with one count of attempted coercion and enticement of a minor.

Howard filed two suppression motions. He first sought to suppress evidence obtained from his SUV, claiming officers lacked probable cause to stop and search his vehicle. He then sought to suppress his statements to Detective Moynihan, as fruit of an illegal stop and arrest. He also argued that Detective Castano questioned him without first advising him of his *Miranda* rights, which tainted his post-warning statements to Detective Moynihan. The district court held a hearing on both motions, then denied each in a written order.

The case went to trial, where it was revealed that Jannie6's MocoSpace profile picture was a cropped picture of Howard found on his phone, and that another of the explicit videos Howard sent Amandpand was filmed at the base chapel. The jury convicted Howard as charged, and he received a 120-month sentence. This appeal ensued.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II.

"When reviewing a denial of a motion to suppress evidence, we review factual findings for clear error and the ultimate constitutionality of law enforcement action *de novo*." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010); *see United States v. Coulter*, 41 F.4th 451, 456 (5th Cir. 2022). We view evidence in the light most favorable to the prevailing party and must defer to the district court's factual findings unless there is "a definite and firm conviction that a mistake has been committed." *Scroggins*, 599 F.3d at 440. Where the denial of a motion to suppress is appealed, we "may consider not only the evidence from the suppression hearing but also evidence presented during the trial." *United States v. Basey*, 816 F.2d 980, 983 n.1 (5th Cir. 1987).

## III.

### A.

Howard first argues that the district court erred by denying his motion to suppress the evidence seized from his person and automobile following the traffic stop because (1.) reasonable suspicion did not exist to stop his vehicle, (2.) he was arrested without probable cause, (3.) the warrantless search of his vehicle was not justified, and (4.) the seizure of his cell phone was not justified. We find no error. *See Scroggins*, 599 F.3d at 440.

### 1.

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). The legality of a traffic stop is analyzed under the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Brigham,* 382 F.3d at 506. Accordingly, to evaluate whether a Fourth Amendment violation occurred during a traffic stop, this court first asks,

"whether the officer's action was justified at its inception," and then, "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* Here, Howard challenges only the first *Terry* prong.

The traffic stop of Howard's vehicle was justified at its inception because the detectives had an objectively reasonable suspicion that Howard was the individual with the online username Jannie6. *See United States v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005). "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity . . . [has] occurred, or is about to occur, before stopping the vehicle." *Id.* A reasonable suspicion exists when the officer can offer specific and articulable facts that, combined with rational inferences from those facts, reasonably warrant the seizure. *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). In determining whether law enforcement had developed a reasonable suspicion, this court reviews "the totality of the circumstances and the collective knowledge and experience of the officer or officers." *Id.* at 631–32.

Detectives knew that Jannie6 was an adult engaged in the illegal activity of communicating in a sexually explicit manner with someone whom he believed to be a minor, distributing sexually explicit material to the alleged minor, and attempting to meet the alleged minor for sex. And detectives knew that Jannie6 was a 41-year-old, white male in the military that drove a Honda SUV. Detectives observed Howard, a white male in military apparel, enter the parking lot, driving a Honda SUV, which he moved around the parking lot in a peculiar manner. Because Howard was the only person in the parking lot for the proposed meeting location at the proposed meeting time that met the known characteristics of Jannie6, detectives had an objectively reasonable suspicion that Howard was Jannie6, even if the officers' earlier "White Pages Lookup" search depicted someone else.  Thus, the detectives

had specific and articulable facts that, combined with rational inferences from those facts, reasonably warranted the traffic stop. *See Estrada*, 459 F.3d at 631. The traffic stop was justified at its inception. *See Lopez-Moreno*, 420 F.3d at 430.

## 2.

Howard next argues that probable cause did not exist for his warrantless arrest. His main contention is that he did not attempt to flee and was not seen texting once he was pulled over, and that, in light of the photograph of Christopher Durand, the detectives were uncertain about whether Howard was Jannie6.

A law enforcement official "may arrest an individual in a public place without a warrant if they have probable cause to believe that the individual committed a felony." *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999). "Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (internal quotation marks and citation omitted). This is an objective test. *United States v. Cooper*, 949 F.2d 737, 744–45 (5th Cir. 1991). Further, "[u]nder the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts." *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). This court must analyze whether probable cause existed "under the totality of the circumstances as to whether there is a fair probability that a crime occurred." *Garcia*, 179 F.3d at 269 (internal quotation marks, alteration, and citation omitted).

Here, probable cause existed for Howard's arrest as soon as the officer pulled him over and obtained his driver's license. *See Garcia*, 179 F.3d at 268–69. Howard's driver's license featured an address in the area where Jannie6 told the alleged minor that he lived and confirmed that Howard was Jannie6's age. Further confirmation: right after Howard was pulled over, Jannie6 sent the alleged minor a text stating that he had been pulled over and Jannie6's profile was deleted from MocoSpace. These facts and circumstances are enough for a reasonable person to conclude that Howard was Jannie6. *Id.* at 268. Any subsequent uncertainty by detectives that Howard was Jannie6 does not change that probable cause existed for Howard's warrantless arrest. *See Cooper*, 949 F.2d at 744–75.

**3.**

Howard also complains about the search of his vehicle. Pursuant to the automobile exception to the warrant requirement, "warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995). "Whether an officer has probable cause to search a vehicle depends on the totality of the circumstances viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *Id.* (internal quotation marks and citation omitted). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 687 (internal quotation marks and citation omitted).

The warrantless search of Howard's vehicle was justified pursuant to the automobile exception to the warrant requirement because detectives had probable cause to believe that his vehicle contained evidence of a crime. *See*

No. 23-50417

*Id.* at 686. Because Jannie6 communicated via text message with the alleged minor, detectives knew that Jannie6 was communicating via cell phone. Thus, the cell phone was evidence of the attempted enticement of a minor to engage in sexual activity and contained further evidence of such. Because Jannie6 sent the alleged minor a text stating that he had been pulled over, detectives had probable cause to believe that the cell phone was in Howard's vehicle. *See id.* Therefore, the detectives lawfully searched Howard's vehicle. *See id.*

**4.**

Last, Howard complains about the seizure of his cell phone from his vehicle. Detectives legally seized Howard's cell phone pursuant to the plain view doctrine. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *see also United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). First, a detective was able to see Howard's cell phone as soon as he walked up to Howard's vehicle, without entering the vehicle. Second, the incriminating nature of the cell phone was immediately apparent because detectives were looking for a cell phone that was evidence of a crime and contained further evidence of a crime. Third, the detectives had a lawful right of access to the cell phone through the automobile exception to the warrant requirement. Therefore, the detectives were able to seize Howard's cell phone without a warrant. *See Hicks*, 480 U.S. at 326.

\* \* \*

In light of the foregoing, the district court did not err in denying Howard's motion to suppress evidence seized from him and his automobile. *See Scroggins*, 599 F.3d at 440.

## B.

Howard next challenges the district court's denial of his motion to suppress statements. Howard argues that, because there was no reasonable suspicion to stop his vehicle or probable cause to arrest him, he should not have been subject to interrogation and his statements are inadmissible. For the reasons previously stated, Howard's argument fails.

Howard further argues that the *Miranda* warnings he received prior to custodial interrogation by Detective Moynihan were ineffective because he had already been interrogated without being informed of his rights. He contends that the statements he made to detectives after receiving *Miranda* warnings should be suppressed. Here, a two-step interrogation technique was not used in a calculated way to undermine the *Miranda* warning that Howard did receive. *See Missouri v. Seibert*, 542 U.S. 600, 622 (2004) (Kennedy, J., concurring in the judgment). Accordingly, the admissibility of Howard's postwarning statements is governed by the principles in *Oregon v. Elstad*, 470 U.S. 298 (1985). *See United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006).

Under this standard, Howard's postwarning statements were voluntary and are admissible because the tactics employed by detectives did not "constitute a Fifth Amendment due process violation" and they were not "so offensive to a civilized system of justice that they must be condemned." *United States v. Lim*, 897 F.3d 673, 692 (5th Cir. 2018) (internal quotation marks and citation omitted); *see Elstad*, 470 U.S. at 318. The district court did not err in denying Howard's motion to suppress the statements that he made to law enforcement. *See Coulter*, 41 F.4th at 456.

## IV.

For the foregoing reasons, Howard's conviction is AFFIRMED.