# NOT DESIGNATED FOR PUBLICATION

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2026-K-0058** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **JERMAINE DONALD** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 560-269, SECTION "J"
Honorable Franz Zibilich, Judge, AD HOC
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Paula A. Brown)

**BROWN, J., DISSENTS WITH REASONS.**

Jason R. Williams, District Attorney
Brad Scott, Assistant District Attorney, Chief of Appeals
Peter J. Vesich, Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

COUNSEL FOR STATE OF LOUISIANA/APPLICANT

**WRIT GRANTED; JUDGMENT REVERSED**

**JANUARY 29, 2026**

*DLD*
*RML*

The state seeks review of the trial court's December 10, 2025 ruling granting a motion to suppress statements made by the defendant, Jermaine Donald.  For the following reasons, this writ is granted and the trial court's judgment suppressing the statements is reversed.

**FACTS AND PROCEDURAL HISTORY**

On December 7, 2023, a grand jury returned a bill of indictment charging the defendant with second degree murder with a firearm; obstruction of justice in a second degree murder investigation; and possession of a firearm by a convicted felon.  The defendant filed a motion to suppress statements, evidence, and identifications.

As to the motion to suppress statements, the defendant averred the statements were obtained after he was in custody and without his first being advised of his *Miranda* rights.  On November 12, 2025, the trial court held a hearing on the motion to suppress statement and requested post-hearing briefs.  On December 10, 2025, the trial court granted the motion to suppress statements.  The state filed a notice of intent on December 10, 2025, and the trial court set January 9, 2026 as the return date.  On January 8, 2026, the state filed a motion for an extension of time to file

1

writ application, and the trial court extended the return date to January 16, 2026. The state timely filed its writ application.

Detective Stewart testified that he was assigned as the lead detective in the July 12, 2023 homicide of Sidney Brown in the 1800 block of Marais St. He stated that surveillance videos revealed that three vehicles were involved in the homicide, including a black Chevy Impala (Impala). The detective averred that he obtained the license plate number of the Impala from surveillance videos and license plate readers tracked the vehicle. On July 18, 2023, the vehicle was tracked to the Stonebridge Apartments on the Westbank. The detective indicated officers surveilled the Impala parked in the Stonebridge Apartments lot, and noted that an individual who was not the defendant opened and closed the trunk. Thereafter, the defendant and this other individual left an apartment and entered the vehicle. The detective and other officers followed the vehicle for some time. Eventually, the defendant stopped for a snowball and the officers apprehended him. As the officers approached the vehicle, they asked the passenger to exit the vehicle. The detective noted the officers observed a firearm in the driver's seat and a firearm in the passenger's seat. He testified that the gun from the driver's seat was ballistically matched to the homicide. The defendant was transported to the station to be questioned by Detective Stewart who identified the first videotaped interview of the defendant (S-1) taken on July 18, 2023.

The video depicts officers handcuffing the defendant to a table in an interrogation room where he is then left alone for a period of time. The pertinent portion of the video starts at 17:30:46 when Detective Stewart enters the room and asks the following questions:

Def: Man, what's this about?

2

Det. Stewart: We gonna talk. What's a good address for you?

Defendant: 8730 Deacon Street.

Det. Stewart: That's where you live now?

Defendant: Yeah.

Det. Stewart: Who you live with there?

Defendant: My mom.

Det. Stewart: Who lives on the Westbank?

Defendant: The Westbank? Where on the Westbank?

Det. Stewart: Stonebridge?

Defendant: Stonebridge.

Det. Stewart: Stonebridge Apartments? That's where you left today, right?

Defendant: I went over there to pick my nephew up.

Det. Stewart: Ok, so that's where your nephew living at? Your girlfriend don't live there?

Defendant: No, my little nephew. . .

Det. Stewart: Alright. What's a good phone number for you?

Defendant: For me?

Det. Stewart: Mhm.

Defendant: 504-388-0359

The detective then immediately begins to explain that he has to review the defendant's *Miranda* rights before they can speak regarding the investigation. The defendant indicated he was trying to see what was going on, and the detective stressed he could not speak with the defendant unless he waived his rights. The defendant indicated he understood his rights, executed a *Miranda* acknowledgment form (S-2), and agreed to speak with the detective. The detective asked about the

Impala, noting it was at the scene of homicide on Marais St. in the seventh ward. The defendant contended that he had only been in possession of the vehicle for two days after purchasing it from "Big Booty Fancy." He noted he had no contact information for her. The detective questioned the defendant about who lived at the Stonebridge Apartments. When the defendant claimed that he just pulled up to pick up his nephew, the detective indicated he was lying as the vehicle was there for some time that day. The detective again asked what lady lived at the Stonebridge Apartments, whether it was a girlfriend or ex-girlfriend.

The trial court granted the motion to suppress the pre- and post-*Miranda* statements from the July 18, 2023 interview. The trial court agreed with the defendant's argument regarding the applicability of *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)(discussed *infra*).

**DISCUSSION**

This Court recently indicated that,

> When a trial court finds facts based on the weight and credibility of witnesses' testimony, a reviewing court may not overturn those findings unless there is no evidence to support them. *State v. Wells*, 2008-2262, p.5 (La. 7/6/10), 45 So.3d 577, 581. On the other hand, a trial court's holdings on questions of law are reviewed *de novo*. *Id*. at p.4, 45 So.3d at 580.

*State v. Atkins*, 2025-0186, p.7 (La. App. 4 Cir. 5/21/25), -- So.3d --, --, 2025 WL 1462073, *4.

In *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612 (1966), the Supreme Court determined that,

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement

4

> officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

The jurisprudence has long noted that "*Miranda* only applies if three conditions are met: (1) the defendant is in 'custody' or significantly deprived of freedom, (2) there is an 'interrogation,' and (3) the interrogation is conducted by a 'law enforcement officer' or someone acting as their agent." *State v. Bernard*, 2009-1178, p.5 (La. 3/16/10), 31 So.3d 1025, 1029. In *Rhode Island v. Innis*, 446 U.S. 291, 301; 100 S.Ct. 1682, 1689–90; 64 L.Ed.2d 297 (1980), the Supreme Court expounded on *Miranda* and determined that, "the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

In this instance, the state does not contest that the defendant was in custody during the July 18, 2023 questioning of the defendant. Rather, the state argues the pre-*Miranda* questions were routine booking questions that did not rise to level of an "interrogation" implicating *Miranda*.

An exception to *Miranda* permits a custodial suspect to be questioned regarding basic biographical data or routine booking questions, without first receiving *Miranda* warnings. *See United States v. Virgen-Moreno*, 265 F.3d 276, 293 (5th Cir. 2001)("There is a routine booking question exception to the *Miranda* rule that covers a person's name, address, height, weight, eye color, date of birth, and current age. *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (plurality opinion)"). In *State v. Landry*, 2015-0485, p.2 (La.

5

App. 4 Cir. 8/7/15), 216 So.3d 917, 918, this Court recognized the routine booking questions exception as follows,

> although it is undisputed that the defendant was not advised of his *Miranda* rights in conjunction with the stop and search in this case or prior to being asked his name, age, and address, the police officer's field interview (recorded by his body-camera) asked for no more information than an individual might supply in response to booking questions as a routine incident of arrest and, therefore, did not amount to interrogation for *Miranda* purposes. *State v. Smith*, 2000–1838, p.4 (La.5/25/01), 785 So.2d 815, 818 (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).

In this instance, the detective questioned the defendant about his address; who he lived with; who lived at the Stonebridge Apartment and whether it was a girlfriend; and his telephone number, prior to advising the defendant of his *Miranda* rights. Arguably, these questions do not implicate *Miranda* as they were routine booking questions. Nothing about the questions demonstrated that the detective should have known that they were reasonably likely to elicit an incriminating response from the defendant. Thus, the detective did not interrogate the defendant prior to the defendant waiving his *Miranda* rights.

Admittedly, Detective Stewart again asked the defendant who lived at the Stonebridge Apartments after issuing the *Miranda* warnings and obtaining a waiver. The defendant argued, and the trial court agreed, that pursuant to *Seibert*, the two-step interrogation by the detective violated *Miranda*. The defendant averred the detective asked questions about who lived at the Stonebridge Apartments both before and immediately after the detective obtained a waiver of *Miranda* rights.

In *Seibert*, police arrested Patrice Seibert and the arresting officer did not provide a *Miranda* warning pursuant to an instruction from Officer Richard Hanrahan. *Seibert*, 542 U.S. at 604; 124 S.Ct. at 2606. After she arrived at the

station, Officer Hanrahan interrogated her for approximately thirty to forty minutes, also without providing *Miranda* warnings, during which she confessed. After a twenty-minute break, Officer Hanrahan advised Ms. Seibert of her rights pursuant to *Miranda* and confronted her with her pre-*Miranda* confession. Ms. Seibert again confessed. After being charged with first-degree murder, Ms. Seibert sought to suppress her statements. During the suppression hearing,

> Officer Hanrahan testified that he made a "conscious decision" to withhold *Miranda* warnings, thus resorting to an interrogation technique he had been taught: question first, then give the warnings, and then repeat the question "until I get the answer that she's already provided once." He acknowledged that Seibert's ultimate statement was "largely a repeat of information ... obtained" prior to the warning.

*Id.*, 542 U.S. at 605–06; 124 S.Ct. at 2606.

The plurality opinion determined warnings given in the midst of a coordinated and continuing interrogation would

> mislead and "depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v. Burbine*, 475 U.S. 412, 424, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). By the same token, it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle.

*Id.*, 542 U.S. at 613–14; 124 S.Ct. at 2611.

In discussing the extent to which lower courts are bound by *Seibert*, the Fifth Circuit explained that,

> *Seibert* is a plurality decision. The U.S. Supreme Court has held regarding such decisions: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'" *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citation omitted). Accordingly, federal circuit courts have recognized that the holding of *Seibert* is found in Justice Kennedy's opinion concurring in judgment.

> *See United States v. Courtney*, 463 F.3d 333, 338 (5th Cir.2006); *United States v. Williams*, 435 F.3d 1148, 1157–58 (9th Cir.2006); *United States v. Naranjo*, 426 F.3d 221, 231–32 (3d Cir.2005). In Justice Kennedy's concurrence, he noted that he "would apply a narrower test applicable only in the infrequent case ... in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Seibert*, 542 U.S. at 622, 124 S.Ct. at 2616 (Kennedy, J., concurring). He added: "If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." *Id*.
>
> Based on this, the jurisprudence holds that "*Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken...." *Courtney*, 463 F.3d at 338; *see also Williams*, 435 F.3d at 1158 ("where law enforcement officers deliberately employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a reasonable person in the suspect's shoes of his rights, the trial court should suppress the confession.") (Emphasis original).

*State v. Bruce*, 14-877, pp.13-14 (La. App. 5 Cir. 3/25/15), 169 So.3d 671, 678.

In *Bruce*, an officer handed the defendant a notebook while he was at the correctional center and asked him to write down what occurred on the day in question. Thereafter, the officer issued *Miranda* warnings and obtained a recorded statement from the defendant. The Fifth Circuit upheld the trial court ruling admitting both the written and recorded statements. The Fifth Circuit distinguished *Seibert* by noting that there was no admission from the detective that he deliberately employed the two-step technique nor any indication that he deliberately employed the two-step technique. *Bruce*, 14-877, p.13, 169 So.3d at 678.

Unlike *Seibert* and *Bruce*, the defendant did not confess during a custodial interrogation to the crime being investigated prior to the issuance of *Miranda*

8

warnings. Rather, the defendant stated he picked up his nephew at the Stonebridge Apartments and that his girlfriend did not live there. The detective herein did not attempt to have the defendant repeat a confession following the issuance of *Miranda* warnings. Instead, the detective questioned the defendant regarding who lived in the apartment. The officers were not surveilling the apartment. They were surveilling the Impala. Similar to *Bruce*, the detective did not testify that he deliberately employed the two-step technique or that his training included the two-step technique. Further, a careful review of Detective Stewart's questioning does not indicate that he deliberately employed the two-step technique. Indeed, when the defendant indicated he was trying to figure out what was going on, the detective specifically informed the defendant he could not discuss the matter unless the defendant waived his rights and agreed to speak to him. The detective did not question the defendant in a calculated way to undermine the *Miranda* warnings. As there was no two-step technique, the detective did not need to perform a curative measure prior to questioning the defendant, as the Court instructed in *Seibert*. Under the particular facts of this case, the trial court abused its discretion in granting the motion to suppress.

**CONCLUSION**

Accordingly, for the above and foregoing reasons, this writ is granted and the trial court's judgment granting the motion to suppress is reversed.

**WRIT GRANTED; JUDGMENT REVERSED**